IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEVEN BAYNUM, | § | |
| | § | |
| Defendant Below, | § | No. 480, 2018 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID: 1310015013A |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 6, 2019
Decided: May 29, 2019

Before **STRINE**, Chief Justice; **SEITZ** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.

Christopher S. Koyste, Esquire, Wilmington, Delaware for Appellant Steven Baynum.

Brian L. Arban, Esquire, Department of Justice, Wilmington, Delaware for Appellee State of Delaware.

**TRAYNOR**, Justice:

In late 2013, Steven Baynum broke into his estranged wife's residence and physically accosted her and her new romantic partner, Dakota Holdren. Approximately one year later, a Superior Court jury found Baynum guilty of first-degree burglary, third-degree assault, offensive touching, and a host of other crimes. After Baynum was sentenced as a habitual offender to 17 years of Level V incarceration, he appealed to this Court, and we affirmed his convictions. Baynum then moved for postconviction relief under Superior Court Criminal Rule 61 claiming, among other things, that his trial counsel provided ineffective assistance of counsel in violation of his rights under the Delaware and United States Constitutions. The Superior Court denied Baynum's motion, and he once again appealed to this court.

In this appeal, Baynum points to two deficiencies in his counsel's performance that prejudiced him. First he contends—and the State agrees—that his lawyers should have asked the trial court to instruct the jury to consider the charge of offensive touching as a lesser-included offense of third-degree assault in connection with his attack on Holdren. Not only would a conviction of the lesser charge have provided Baynum with the possibility of a lighter sentence, but to the extent it would have been based on the absence of physical injury, the corresponding acquittal of the more serious third-degree assault charge would have undermined the State's prosecution of the first-degree burglary charges, which also had a physical-injury

component. Second, Baynum claims that his counsel during his direct appeal made a prejudicial mistake by not appealing the trial court's refusal to grant a mistrial following the State's introduction of improper opinion testimony from one of the lead detectives.

The Superior Court rejected both of Baynum's claims. But for the reasons that follow, we agree with Baynum on his first claim. The Superior Court itself found that trial counsel's failure to request an instruction on the lesser-included offense of offensive touching was not objectively reasonable. This finding was consistent with the State's concession that Baynum would have been entitled to the instruction had he requested one. By this concession, the State acknowledged that there was a rational basis in the evidence supporting a guilty verdict on the lesser offense (offensive touching) rather than the greater offense (third-degree assault). It follows that there was a reasonable probability, but for trial counsel's failure, of a different outcome—one more favorable to Baynum. We therefore reverse the Superior Court's denial of postconviction relief as to the third-degree assault and first-degree burglary convictions.

But we disagree with Baynum on his ineffective-assistance claim against his appellate counsel. We see no reasonable probability that we would have reversed Baynum's convictions on the ground that the Superior Court should have ordered a mistrial in the wake of the detective's testimony, which was offered in response to

3

similar testimony elicited by Baynum and was the subject of a curative instruction. We therefore affirm the denial of postconviction relief as to the balance of Baynum's convictions.

## I. BACKGROUND[1]

In 2012, Baynum and his wife, Manisha, decided to experiment with an open marriage, and the two had an intimate experience with Holdren. Thereafter, Manisha decided to leave Baynum and entered into a more serious relationship with Holdren.

In September 2013, Manisha filed for divorce in Family Court. A Family Court order granted Manisha exclusive use of the couple's home at 28 Harvest Lane in Newark, Delaware and prohibited Baynum from contacting Manisha or being at 28 Harvest Lane. Nevertheless, Baynum often stayed at 28 Harvest Lane with Manisha and their two children, and Baynum also often stayed at his grandparents' home at 951 New London Road, which neighbored 28 Harvest Lane.

In the early hours of October 24, 2013, police responded to 28 Harvest Lane after someone dialed 911 and hung up. Officers knocked on the door, heard a scream, and saw Manisha and Holdren run out the door while claiming that Baynum was inside with a knife. Police did not find Baynum inside, however. Later that

---

[1] The factual background is largely taken from this Court's decision on direct appeal in *Baynum v. State*, 133 A.3d 963 (Del. 2016).

4

morning, police arrested Baynum in Cecil County, Maryland, near the Delaware-Maryland border.

A grand jury indicted Baynum on sixteen offenses, including home invasion, first-degree burglary, third-degree assault (against Holdren), and offensive touching (against Manisha).

At trial, Manisha and Holdren testified that Baynum had entered their house while they were asleep and made his way up to the bedroom. When Manisha discovered Baynum crouched in her bedroom doorway, Baynum got up and began punching Holdren. Although Manisha dialed 911 from a landline, Baynum took the phone from her hands and removed the battery. Before police arrived in response to the disconnected call, Baynum also allegedly punched Manisha and attempted to tie Holdren and Manisha up with electronics cords.

The jury found Baynum guilty of two counts of first-degree burglary (one count as a lesser-included offense of home invasion), two counts of second-degree unlawful imprisonment (both as lesser-included offenses of attempted first-degree kidnapping), two counts of menacing (both as lesser-included offenses of aggravated menacing), and one count each of third-degree assault, harassment, and offensive touching. On the State's motion, the Superior Court declared Baynum a habitual offender and sentenced him to 17 years' imprisonment for the first-degree burglary

charges, and imposed suspended sentences for the remaining charges. We affirmed Baynum's convictions on direct appeal.

Baynum then filed *pro se* motions for postconviction relief and appointment of postconviction counsel. The Superior Court granted Baynum's request for postconviction counsel, who then filed an amended motion. In his amended motion, Baynum argued that his trial counsel was ineffective for failing to request a jury instruction on offensive touching as a lesser-included offense of third-degree assault. The differences in sentencing ranges for offensive touching and third-degree assault are relatively insignificant[2] when viewed against Baynum's 17-year total sentence. Nevertheless, Baynum argues that if the jury had found Baynum guilty of only offensive touching instead of third-degree assault, it is reasonably probable that a jury acting consistently would also have found him guilty of only second-degree burglary—a lesser-included offense upon which the jury was instructed—rather than first-degree burglary. This is so, according to Baynum, because the basis for the hypothetical third-degree assault acquittal and offensive touching conviction would be the absence of physical injury—an absence that would cause the first-degree burglary charge to fail as well.

---

[2] Third-degree assault is a class A misdemeanor carrying a sentence of up to one year of Level V incarceration and up to a $2,300 fine. 11 *Del. C.* § 601; 42 *Del. C.* § 4206(a). Offensive touching, under the circumstances of this case, is an unclassified misdemeanor carrying a sentence of up to 30 days at Level V and a fine of up to $575. 11 *Del. C.* § 601; 42 *Del. C.* § 4206(c).

6

Baynum also argued that his appellate counsel was ineffective for failing to appeal the trial court's denial of a mistrial following an improper exchange at trial between the prosecutor and one of the investigating officers.[3] Trial and appellate counsel submitted affidavits, and the Superior Court held an evidentiary hearing. After review, a Superior Court Commissioner recommended that the Superior Court deny Baynum's motion for postconviction relief.[4] The Superior Court adopted the Commissioner's Report and denied Baynum's amended postconviction motion.[5] Baynum appeals that denial to this Court, raising the same claims as below.

Two aspects of the trial are relevant to the issues before us now—the evidence concerning the extent of Holdren's injuries and the lead detective's testimony about the "possibility" of Baynum's guilt.

### i. The altercation and evidence of injury

Although Holdren testified that he had suffered a swollen lip and Baynum's grandmother testified that Baynum supposedly told her that "he [Baynum] had beat

---

[3] On appeal, Baynum's appellate counsel did not raise the issue of the officer's testimony because, as he testified, he "did not consider the claim." App. to Opening Br. A338 ("A__" hereafter). As appellate counsel said, "I don't remember even the issue crossing my mind, so I don't know how I would have researched it if I didn't consider it. And I did review my notes in my own appellate file prior to today, and I did not have any notes about that issue." A340. In appellate counsel's words, "[i]t's fair to say that I didn't consider it." A341.

[4] *State v. Baynum* (*Commissioner's Report*), 2018 WL 1896489 (Del. Super. Ct. Apr. 16, 2018).

[5] Ex. A (Superior Court order adopting the Commissioner's Report, accepting all of the findings of fact and recommendations made in the Commissioner's Report).

the crap out of [Holdren],"[6] one of the responding officers at the scene gave more equivocal testimony regarding Holdren's injuries:

> Q: Did you notice any injuries on [Holdren]?
> [Responding officer]: At first glance, I didn't. When he first ran out, I didn't notice any cuts or anything like that. Once I was standing outside with him, I did notice that he had a swollen lip.[7]

### ii. The lead detective's testimony

During cross-examination of the State's lead detective, Steven Burse, Baynum's trial counsel pursued the following line of questioning:

> Q: Detective, do you recall testifying in a pretrial hearing in this case?
> A: I do.
> Q: Do you remember during the hearing you told me that anything is possible?
> A: Yes.
> Q: Isn't it possible that this didn't happen the way Manisha and Dakota said it happened?
> A: Anything is possible.
> Q: Isn't it possible that, in fact, this alleged activity did not happen?
> A: Which activity specifically are you referring to?
> Q: This incident. Isn't it possible that this alleged incident did not occur?
> A: In my opinion?
> Q: I'm asking-what I'm saying is, is it possible that this incident didn't occur.
> A: Anything is possible.[8]

---

[6] App. to Answering Br. B1; Answering Br. 8; A96–97.
[7] A27.
[8] A77.

8

On redirect examination, the State, apparently believing that a door had been opened, asked:

> Q: And, I guess, Detective, the last question I have for you is, what is your opinion on the possibility of the defendant, Steven Baynum, having committed these acts?
> A: That he did it.[9]

Baynum's counsel then requested a sidebar conference and objected to the question and Detective Burse's answer as impermissible opinion testimony. The State countered that Baynum's counsel opened the door to the challenged question, and the Superior Court overruled the objection, making Detective Burse's answer the last words of testimony the jury heard that day. Nevertheless, the Superior Court decided to give the objection more thought overnight.

The next day, Baynum's counsel requested that the court dismiss the case or, in the alternative, declare a mistrial because of the State's improper question and the detective's answer. The State conceded that "the last question did cross the line"[10] but offered that a curative jury instruction would be a sufficient remedy. Ultimately, the court did not declare a mistrial, but it did strike both lines of questioning regarding possibilities and probabilities and gave the jury a curative instruction.[11]

---

[9] A78.
[10] A83.
[11] The next morning, the judge told the jury the following:

## II. STANDARD AND SCOPE OF REVIEW

This Court reviews denials of postconviction relief for abuse of discretion.[12]

We review *de novo* constitutional claims, including ineffective assistance of counsel

---

First off though, I want to talk to you about some things that happened at the end of the trial yesterday. You remember Detective Burse was testifying—and he's sitting at the State table—and there was a series of questions asked by Mr. Flockerzie at the very end about possibilities.

And that—Mr. Flockerzie was eliciting opinion evidence from the detective, you know, what is possible. You're to disregard that testimony. The officer's opinion is not relevant. He is a fact witness. So what his opinion is as to possibilities is not relevant and you're to disregard that testimony in your deliberations.

In addition, the State started their redirect of Detective Burse, as you can remember, with the notion of, you hear Mr. Flockerzie say anything is possible, and then there was a whole line of questioning as to probable, what would be probable. And there was a question asked of the officer of whether he thought that the defendant did the act and asked that opinion.

That, too, is irrelevant. He is a fact witness. His opinion as to the guilt or innocence of Mr. Baynum is irrelevant and you're to also disregard that. It was started with the possibilities, which was eliciting opinion evidence from a fact witness, and that was—is irrelevant and you're to disregard that in your deliberations. And the probabilities questions asked by the State that ended with the question about his opinion as to whether Mr. Baynum committed the act is also opinion and you're to disregard that testimony as well.

You're not to consider either parts of those testimonies, either on cross-examination of Detective Burse on possibilities or the redirect of Detective Burse in response to that as to what he probably thought happened. It's opinion evidence. It's not to be considered in your final deliberations. All right?

A84–85.

As a part of his instructions prior to the jury's deliberations, the judge again reminded the jury:

As I instructed you during the trial, Detective Burse—this is another point. As I instructed you during trial, Detective Burse's opinion as to possibilities and probabilities is not relevant and you're still instructed to disregard Detective Burse's testimony on these points.

A158.

[12] *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).

claims.[13]  Under *Strickland v. Washington*,[14] a petitioner seeking postconviction relief on the basis of ineffective assistance of counsel must show that (1) his counsel's performance "fell below an objective standard of reasonableness" ("performance")[15] and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different ("prejudice").[16]

### III. ANALYSIS

#### A. Lesser-included offense instruction

First, Baynum claims that his trial counsel's failure to request a jury instruction on offensive touching as a lesser-included offense of third-degree assault, and thereby invite the jury to consider convicting Baynum of only offensive touching rather than of the more-serious third-degree assault charge, constituted ineffective assistance that prejudiced him.  A party is entitled to a lesser-included instruction "if there is a rational basis in the evidence to convict the defendant of the lesser crime rather than the greater."[17]  And as we recently held in *White v. State*,[18] where a

---

[13] *Starling v. State*, 130 A.3d 316, 325 (Del. 2015).  We note that while defendants do not have a constitutional right to postconviction counsel, they do have a constitutional right to counsel on the first direct appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 402 (1985).

[14] 466 U.S. 668 (1984).

[15] *Id.* at 697.

[16] *Id.* at 694.

[17] *Miller v. State*, 893 A.2d 937, 948 (Del. 2006).

[18] 173 A.3d 78 (Del. 2017).

reasonable jury could find that the defendant was guilty of the lesser crime rather than the greater, failure to request lesser-included instruction is prejudicial and warrants postconviction relief in the form of a new trial.[19]

Here, the difference between third-degree assault and offensive touching is that third-degree assault requires a showing of physical injury but offensive touching does not.[20] "'Physical injury' means impairment of physical condition or substantial pain."[21] The State conceded below that Baynum would have been entitled to the offensive-touching instruction had one been requested and does not meaningfully challenge on appeal that trial counsel's failure to request the instruction was objectively unreasonable. Instead, the State focuses its arguments on Baynum's purported failure to demonstrate prejudice.

    *i.*    *The Superior Court correctly determined that trial counsel's failure to request a lesser-included instruction was objectively unreasonable*

Although our review is *de novo*, it is instructive to examine the Superior Court's findings and analysis, which we agree with in part. Citing *Weber v. State*,[22]

---

[19] *Id*. at 83–84.
[20] *Compare* 11 *Del. C.* § 611 (third-degree assault), *with* 11 *Del. C.* § 601 (offensive touching).
[21] 11 *Del. C.* § 222(23).
[22] 971 A.2d 135, 142 (Del. 2009) (quoting *Bentley v. State*, 930 A.2d 866, 875 (Del. 2007)) ("A defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, however weak that evidence may be."). While such an error "is harmless provided the jury returns a guilty verdict for an offense higher up rather than for an intermediate offense which was also charged," *Weber*, 971 A.2d at 142 (quoting *Geschwendt v. Ryan*, 967 F.2d 877, 882–87 (3d Cir. 1988)), the error was reversible in *Weber* because there was sufficient evidence supporting an acquittal of first-degree robbery and a

the Superior Court found that Baynum was entitled to a lesser-included instruction, an unsurprising finding given that the parties agreed that a reasonable jury could have acquitted Baynum of third-degree assault. In turn, the parties' agreement that acquittal of third-degree assault was a reasonable possibility is sensible given that the evidence of injury, which consisted primarily of the victims' testimony and a statement from the responding officer that was equivocal, might have left the jury doubting that Holdren suffered injury at the hands of Baynum.

The Superior Court then found that trial counsel's failure to request an instruction for offensive touching as a lesser-included offense of third-degree assault was "in error and not objectively reasonable."[23] The court also concluded that there was a "substantial risk . . . that the jury may have elected to convict Baynum of Assault Third Degree, despite one element of the charge unproven, rather than acquit him entirely where they felt some criminal conduct occurred."[24]

---

conviction of offensive touching. We acknowledge that *Strickland*'s prejudice standard for postconviction relief—reasonable probability of a different outcome—does not exactly correspond to the harmless error standard we applied in *Weber* on direct appeal—harmless beyond a reasonable doubt. *Weber,* 971 A.2d at 142 (citing *Geschwendt*, 967 F.2d at 882–87 (citing *Vujosevic v. Rafferty*, 844 F.2d 1023, 1027 (3d. Cir. 1988) (requiring that such errors be harmless beyond a reasonable doubt))).

[23] *Commissioner's Report*, *supra* note 4, at *5.

[24] *Id.*; *see Keeble v. U.S.*, 412 U.S. 205, 213 (1973) ("Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction.").

We concur with the Superior Court's finding that, absent the lesser-included instruction, there was as a "substantial risk" that the jury might have found Baynum guilty of a crime it might otherwise have found him not guilty of had it been presented with another option. What is more, given that there is no "advantage which could be gained by withholding a request for the[] instruction[],"[25] failing to make such a request did not constitute sound trial strategy. For the Superior Court, as for us, trial counsel's performance here fell below an objective standard of reasonableness.[26]

### ii. *The Superior Court erred by determining that Baynum was not prejudiced*

To show that there was a "reasonable probability" of a different outcome to satisfy *Strickland*'s prejudice prong, a defendant must demonstrate more than a mere "conceivable" chance of a different result.[27] This reasonable probability standard is not an onerous one to meet. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[28] Although this objective inquiry is not mathematically precise, it requires finding prejudice when there is a substantial likelihood—i.e., a meaningful chance—that a different outcome would have occurred but for counsel's deficient performance. It is a lower standard than "more

---

[25] *Neal v. State*, 80 A.3d 935, 944 (Del. 2013).
[26] *Id*. at 944–45; *White*, 173 A.3d at 80.
[27] *Harrington v. Richter*, 562 U.S. 86, 112 (2011).
[28] *Strickland*, 466 U.S. at 694.

likely than not," and therefore does not require a defendant to "show that counsel's deficient conduct more likely than not altered the outcome in the case."[29]

Here, although the Superior Court found that there was a "substantial risk" that the jury had wrongfully found Baynum guilty in the absence of a lesser-included instruction, the court nevertheless concluded that Baynum failed to show a reasonable probability that the results of the proceeding would have been different.

The Superior Court offered two reasons for its conclusion: (1) the jury found Baynum guilty of first-degree burglary when second-degree burglary was offered as a lesser-included offense, rendering a guilty finding on the third-degree assault charge the only possible consistent outcome and (2) Baynum had not shown that the trial judge would have given him a lesser sentence.

But the Superior Court's reasoning is at odds with itself. According to the Superior Court, the jury's verdict on the first-degree burglary charge indicates that it could not have consistently—and therefore, would not have—acquitted Baynum of third-degree assault. But it seems to us that this logic applies equally forcefully in the other direction: because the jury did not have the option to consider offensive touching—an offense that does not require injury—the jury likewise might have felt compelled to ignore the option of second-degree burglary, an offense that likewise does not require injury. In other words, if there was a "substantial risk" (as the

---

[29] *Id.* at 693.

Superior Court found) that the jury was willing to find Baynum guilty of third-degree assault despite no proven injury, then it seems that there also was a "substantial risk" that the jury was willing to find Baynum guilty of first-degree burglary despite no proven injury in order to maintain a consistent overall verdict.

Furthermore, the Superior Court's argument that Baynum was not prejudiced because he likely would not have received a lesser sentence even with a lesser conviction was also erroneous.

First, it is irrelevant whether the trial judge would have given Baynum a lesser sentence. If Baynum would have been found guilty of a lesser offense, that is enough to change the outcome of the case, which is what *Strickland* requires.

Second, the Superior Court's finding that Baynum failed to demonstrate a reasonable probability of a lesser sentence is in conflict with its reasoning that, if the jury had found Baynum guilty of offensive touching instead of third-degree assault, "the logical corollary is that Baynum would have been convicted of Burglary Second, not Burglary First."[30] Second-degree burglary, of course, has a less severe sentencing range than first-degree burglary, especially under the circumstances of this case. The minimum mandatory sentence that Baynum would have faced for a

---

[30] *Commissioner's Report*, *supra* note 4, at *6. Although a person may also commit first- and second-degree burglary without causing injury if that person possesses a deadly weapon during the commission of the crime, 11 *Del. C.* §§ 825–26, that is not at issue in this case.

16

second-degree burglary conviction would have been eight years instead of 15 years for first-degree burglary.[31] If it is logical—or is at least reasonably probable—that Baynum would have been found guilty of a less-serious felony, then it follows that Baynum could have received a less-severe sentence. As Baynum contends, it is an unreasonable supposition to think that a sentencing judge would hand down the same sentence regardless of the seriousness of the offenses (or the minimum sentence, for that matter). Thus, even if sentencing mattered in this case, there is at least a reasonable probability of a different sentence, and that is all *Strickland* requires to show prejudice.

To reiterate, although a mere conceivable possibility of a different outcome is insufficient for relief under *Strickland*, that is not what the Superior Court found. Instead, it found that there was a "significant risk" that the jury's verdict would have been different had the jury been instructed on the lesser-included offense. We agree with that finding, and from that finding we infer that there was a "reasonable probability" of a different outcome. Combined with our finding of substandard performance, that reasonable probability requires us to vacate Baynum's convictions for first-degree burglary and third-degree assault.

---

[31] 11 *Del. C.* § 825 (second-degree burglary is a class D felony); 11 *Del. C.* § 826 (first-degree burglary is a class C felony); 11 *Del. C.* § 4205 (sentencing ranges).

17

## B. Detective Burse's testimony

Because we have concluded that Baynum's third-degree assault and burglary convictions must be vacated, we consider Baynum's claim that his appellate counsel was ineffective only as to Baynum's other convictions. And here, we do not find that Detective Burse's trial testimony that "he [Baynum] did it"[32] warrants additional relief.

As with Baynum's first claim, the State focuses its arguments against Baynum's second claim on *Strickland*'s prejudice prong. According to the State, there was not a reasonable probability that the outcome of the direct appeal would have been different even if Baynum raised the denial of a mistrial on direct appeal. The Superior Court agreed with the State that there was not a reasonable probability of prejudice, and we concur.

As the State concedes, we would have reviewed the denial of Baynum's mistrial request as one based on alleged prosecutorial misconduct. Because defense counsel raised a timely objection at trial, we would have reviewed for harmless error.[33] When conducting such a review, we first examine *de novo* whether the actions constitute prosecutorial misconduct.[34] Given that the State conceded that its

---

[32] A78.
[33] *Baker v. State*, 906 A.2d 139, 148 (Del. 2006).
[34] *Kirkley v. State*, 41 A.3d 372, 376 (Del. 2012).

"last question did cross the line,"[35] we assume without deciding, as the Superior Court did, that the State's conduct constituted prosecutorial misconduct.[36]

But even where there is misconduct,

> an improper remark by a prosecutor requires reversal of a conviction . . . only when it prejudicially affects substantial rights of the accused. To determine whether prosecutorial misconduct prejudicially affects a defendant's substantial rights, we apply the three factors of the *Hughes* test, which are: (1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken to mitigate the effects of the error. The factors in the *Hughes* test are not conjunctive and do not have the same impact in every case; for example, one factor may outweigh the other two. Moreover, we apply the test itself in a contextual, case-by-case, and fact sensitive manner.[37]

If the *Hughes* test does not warrant reversal, we proceed to the *Hunter* test, under which we may reverse, but need not do so, if we find that "the prosecutor's statements or misconduct are repetitive errors that require reversal because they cast doubt on the integrity of the judicial process."[38] With respect to *Hunter*, however, it cannot be reasonably disputed that the errors were indeed not repetitive, and it does not seem that Baynum attempts to argue so before us. Accordingly, our analysis focuses on the *Hughes* test.

---

[35] A83; *see also* Answering Br. 28 ("[T]he prosecutor's line of questioning was admittedly inartful").

[36] A persuasive argument could be made that Baynum's counsel opened the door to the question that elicited the challenged testimony.

[37] *Baker*, 906 A.2d at 149.

[38] *Id*.

19

The State appears to concede that the issue affected was central but argues that the case was not close and that the trial judge mitigated the effects of the error. We agree. Like the State, we think that the case was not close. Two eyewitnesses, both of whom knew Baynum intimately, described Baynum's conduct to the jury. Baynum sent text messages to Manisha about going over to Manisha's home that night. Moreover, Baynum's decision to hide out in Maryland seems inexplicable if all he had done was place a ladder in Manisha's driveway as he claims. Additionally, Baynum's explanation for why he had an apparent bite mark on his arm, a mark that was consistent with Manisha's testimony of what happened, was unconvincing. Even without Detective Burse's disputed testimony, it is likely that a jury would have found beyond a reasonable doubt that Baynum broke into Manisha's home and harassed Manisha and Holdren in a manner consistent with the jury's verdict on all the charges other than those of third-degree assault and first-degree burglary. And of course, the trial judge gave two curative instructions to mitigate the effects of the error.

As mentioned, "[t]he factors in the *Hughes* test are not conjunctive and do not have the same impact in every case"[39] and "we apply the test itself in a contextual, case-by-case, and fact sensitive manner."[40] And here, because the case was not close,

---

[39] *Id.*
[40] *Id*.

20

the trial judge gave curative instructions, and context shows that defense counsel opened the door to the otherwise objectionable question, we most likely would have not found prejudice and most likely would have rejected this claim on direct appeal. Therefore, Baynum is not entitled to relief on this claim because he has failed to show prejudice, at least as to the charges that we have considered in connection with this claim.

## IV. CONCLUSION

Baynum has shown that the Superior Court erred when it failed to find prejudice despite trial counsel's failure to request a justifiable lesser-included-offense instruction. Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for a new trial. In particular, we reverse the Superior Court's denial of postconviction relief as to the third-degree assault and first-degree burglary convictions, which are hereby **VACATED**. We affirm the Superior Court's denial of postconviction relief as to the remainder of the convictions.