IN THE SUPREME COURT OF THE STATE OF DELAWARE

MARCUS ROSSER, §
§
Defendant Below, § No. 41, 2019
Appellant, §
§ Court Below—Superior Court
v. § of the State of Delaware
§
STATE OF DELAWARE, § Cr. ID No.  N1407011336
§
Plaintiff Below, §
Appellee. §

Submitted: September 20, 2019
Decided: October 28, 2019

Before **VALIHURA**, **SEITZ**, and **TRAYNOR**, Justices.

## **O R D E R**

(1)     The appellant, Marcus Rosser, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61. After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)     The record reflects that in May 2015, a Superior Court jury found Rosser guilty of Assault First Degree; two counts of Possession of a Firearm During the Commission of a Felony; Carrying a Concealed Deadly Weapon; Robbery First Degree; and Aggravated Possession of a Firearm by a Person Prohibited ("APFBPP").  After a presentence investigation, the Superior Court sentenced

Rosser to a total period of forty years of incarceration, to be suspended for probation after serving eighteen years in prison.

(3) The evidence presented at trial reflected that, around 8:00 p.m. on July 13, 2014, Ronald Maddrey encountered Rosser, who was an acquaintance of Maddrey's, at a 7-Eleven convenience store in New Castle, Delaware. Rosser was driving a silver SUV. Maddrey agreed to sell marijuana to Rosser at a different location. Maddrey and Rosser then drove their vehicles to a nearby apartment complex. As Maddrey approached Rosser's SUV, Rosser pulled out a gun and shot Maddrey in the arm. During a police interview after the shooting, Maddrey identified Rosser as his assailant.

(4) Later that same evening, a teenager named Tyler Buchanan was outside a different New Castle convenience store when a man in an SUV beckoned Buchanan to approach the vehicle. Buchanan did not comply, and he made a rude hand gesture when the man started to drive away. The man then returned, and as Buchanan walked toward the vehicle, the man brandished a gun at Buchan and robbed him of a pack of cigarettes. Later, in the early morning hours of July 14, 2014, the police showed Buchanan a photographic array. Buchanan identified Rosser as the man who robbed him at gunpoint.

(5) Shortly after the Buchanan robbery, a police officer observed an SUV matching the description of Rosser's SUV near the apartment complex where

2

Maddrey had been shot. The officer stopped the vehicle and arrested Rosser. The police searched the SUV and seized a revolver with one bullet missing. Both Maddrey and Buchanan testified at trial and identified Rosser as their assailant. Rosser did not testify at trial. This Court affirmed on direct appeal.[1]

(6) Following his conviction, Rosser filed several motions, including a *pro se* motion for postconviction relief in which he asserted that his trial counsel provided ineffective assistance. The Superior Court appointed postconviction counsel to represent him. After reviewing the record, postconviction counsel concluded that there were no meritorious grounds for relief and moved to withdraw under Superior Court Criminal Rule 61(e)(7). After additional submissions, including an affidavit from trial counsel addressing the claims of ineffective assistance of counsel, the motion for postconviction relief was referred to a Commissioner for a report and recommendation under Superior Court Criminal Rule 62.

(7) The Commissioner entered a report and recommendation in which she concluded that Rosser's motion for postconviction relief was without merit and recommended that the court deny the motion for postconviction relief and grant postconviction counsel's motion to withdraw.[2] After *de novo* review, the Superior

---

[1] *Rosser v. State*, 2016 WL 1436604 (Del. Apr. 5, 2016).
[2] *State v. Rosser*, 2018 WL 6432985 (Del. Super. Ct. Nov. 26, 2018) (Commissioner's report and recommendation).

3

Court adopted the Commissioner's recommendations.[3] Rosser has appealed to this Court.

(8) On appeal, Rosser argues that the Superior Court erred by ruling that his trial counsel did not provide ineffective assistance by (i) failing to request a "missing evidence" jury instruction; (ii) stipulating that Rosser was a person prohibited from possessing a firearm and failing to file a motion to sever the APFBPP charge from the other charges; and (iii) failing to adequately investigate the case. To the extent that Rosser has not raised or briefed on appeal other claims that he presented to the Superior Court, those claims are deemed waived and will not be addressed by the Court.[4]

(9) We review the Superior Court's denial of postconviction relief for abuse of discretion.[5] We review *de novo* constitutional claims, including claims of ineffective assistance of counsel.[6] In order prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) his defense counsel's representation fell below an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's errors, the result of the proceeding

---

[3] *State v. Rosser*, 2018 WL 6721365 (Del. Super. Ct. Dec. 20, 2018).
[4] *Murphy v. State*, 632 A.2d 1150 (Del. 1993).
[5] *Baynum v. State*, 211 A.3d 1075, 1082 (Del. 2019).
[6] *Id.*

would have been different.[7]  Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[8]  A defendant must also make concrete allegations of actual prejudice to substantiate a claim of ineffective assistance of counsel.[9]

(10)  First, Rosser argues that trial counsel was ineffective because he did not request a *Lolly* instruction based on the State's failure to collect the stolen cigarette pack, which the robber tossed into the street after taking it from Buchanan at gunpoint.  A *Lolly* instruction "tells the jury, in a case where the State has failed to collect or preserve evidence which is material to the defense, to assume that the missing evidence would have tended to prove the defendant not guilty."[10]  Rosser contends that the police officers who investigated the Buchanan robbery negligently failed to collect the cigarette pack, which might have contained material evidence of the robber's identity, in the form of DNA or fingerprints.

(11)  Rosser has not overcome the strong presumption of reasonable representation or demonstrated actual prejudice concerning this claim, because he

---

[7] *Harris v. State*, 2018 WL 3239905, at *2 (Del. July 2, 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

[8] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[9] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

[10] *Baynum v. State*, 133 A.3d 963, 967 (Del. 2016) (internal quotations omitted).  *See Deberry v. State*, 457 A.2d 744 (Del. 1983) (holding that the State, including its police agencies, is obligated to preserve evidence that is material to a defendant's guilt or innocence and that, when the State fails in this duty, the defendant is entitled to an inference that the evidence would be exculpatory); *Lolly v. State*, 611 A.2d 956 (Del. 1992) (extending *Deberry* to a claim involving a police failure to gather evidence).

5

has not shown that the cigarette package was material to his guilt or innocence. "Evidence is material only if there is a reasonable probability that it will affect the result of the proceeding."[11] In *Lolly*, the police failed to collect blood that was left behind when a burglar entered a residence through a booby-trapped window; there were no eyewitnesses to the burglary and the blood likely would have contained evidence material to the identification of the perpetrator.[12] In this case, in contrast, the victim identified Rosser as the perpetrator, and it is mere speculation that the cigarette pack might have provided any evidence regarding the robber's identity.[13]

(12) Second, Rosser contends that his trial counsel provided ineffective assistance by agreeing, with Rosser's assent, to stipulate that Rosser was a person prohibited from possessing a firearm and by failing to seek to sever trial of the APFBPP charge from trial on the other charges. A defendant making an ineffective assistance of counsel claim based on a failure to seek severance of charges "must show that joinder of the offenses was sufficiently prejudicial that it was objectively unreasonable for defense counsel not to move for severance."[14] Moreover, "[j]oinder of person-prohibited charges with other charges is appropriate when the

---

[11] *Cook v. State*, 2000 WL 1177695, at *4 (Del. Aug. 14, 2000).

[12] *Lolly*, 611 A.2d at 958.

[13] *See Cook*, 2000 WL 1177695, at *4 (holding that counsel was not ineffective for failing to request a *Lolly* instruction concerning blood observed in a getaway car; the blood was not material to the defendant's claim of misidentification because the defendant was identified by eyewitnesses).

[14] *Moody v. State*, 2018 WL 4676706, at *2 (Del. Sept. 24, 2018) (internal quotations omitted).

6

charges are 'based on the same act or transaction[,] constituting parts of a common scheme or plan.'"[15]

(13) Joinder was appropriate here, and Rosser therefore cannot show that it was objectively unreasonable for trial counsel not to seek severance. Rosser was charged with Aggravated Possession of a Firearm by a Person Prohibited, which required the jury to conclude that, while Rosser possessed the firearm, he caused serious physical injury to Maddrey. The APFBPP charge was therefore part of the "same act or transaction" as the other charges arising from the Maddrey incident, and counsel did not act unreasonably by not seeking severance. Moreover, in these circumstances, there is no reason to believe that severance of the charges would have resulted in a different outcome. Similarly, the Superior Court did not err by determining that trial counsel's advice to Rosser to stipulate to his person-prohibited status in order to prevent the jury from hearing evidence regarding Rosser's prior convictions was not unreasonable or substantially prejudicial.[16]

(14) Third, Rosser asserts that his trial counsel failed to adequately investigate the case. Specifically, he contends that trial counsel did not attempt to

---

[15] *Brooks v. State*, 2018 WL 5980577, at *2 (Del. Nov. 13, 2018).

[16] *See id.* at *3 (stating that stipulation to person-prohibited status was a reasonable trial strategy because it minimized the effect of the defendant's criminal history on the trial and that, "[v]iewed together, trial counsel's decisions to forgo a severance motion so that Brooks faced one trial and to stipulate that Brooks was a person-prohibited were neither objectively unreasonable nor sufficiently prejudicial to warrant relief under rule 61").

develop a justification defense based on the statements of "Nas," an acquaintance of Rosser's and Maddrey's who interacted with Rosser and Maddrey at the 7-Eleven store shortly before the Maddrey shooting. In his affidavit in response to Rosser's postconviction motion, trial counsel indicated that in his view the evidence did not support a self-defense claim, because Rosser never admitted shooting Maddrey and there was no evidence that Maddrey was the aggressor in the confrontation or that he possessed a weapon.[17] In support of his claim of ineffective assistance, Rosser has submitted a transcript of an interview that a defense investigator conducted with Nas. Nas told the defense investigator that he was speaking to Maddrey at the 7-Eleven store when Rosser arrived. Nas stated that Rosser was acting erratically, and that Rosser referred to Maddrey as "the enemy" and threatened to "shoot all y'all up" before speeding off in his vehicle.[18] Nas also stated that he called Rosser later to check on him and Rosser said "Man, I think I messed up. I messed up."[19] The Nas interview is not exculpatory, and therefore does not support a conclusion that trial counsel's determination not to pursue a justification defense fell below an objective standard of reasonableness, or that Rosser was prejudiced by that determination.[20]

---

[17] Appendix to Opening Brief at A-50.
[18] Appendix to Opening Brief at A-20-22.
[19] Appendix to Opening Brief at A-27.
[20] *See Tice v. State*, 1995 WL 715854, at *3 (Del. Nov. 13, 1995) (rejecting claim of ineffective assistance of counsel based on failure to call victim as a defense witness because further testimony

8

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

from the victim "potentially could have done more harm than good" to the defense and the defendant had "failed to substantiate to any degree how [the victim's] testimony during the defense portion of trial would have changed the outcome of the trial in [the defendant's] favor"); *Slater v. State*, 1995 WL 89955, at *4 (Del. Mar. 1, 1995) ("[A]lthough Slater complains about counsel's failure to call certain witnesses, he offers no proof of the exculpatory testimony they could have provided. In sum, it does not appear from the record that counsel's representation was below an objective standard of reasonableness under prevailing professional norms.").