IN THE SUPREME COURT OF THE STATE OF DELAWARE

HERBERT CLANTON, §
§ No. 39, 2022
Defendant-Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No: 1411018085
STATE OF DELAWARE, §
§
Appellee. §

Submitted: August 10, 2022
Decided: October 20, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, and **VAUGHN**, Justices.

## O R D E R

On this 20th day of October 2022, it appears to the Court that:

(1)     The defendant-appellant, Herbert Clanton ("Clanton"), appeals from the Superior Court's denial of his Motion for Postconviction Relief. Clanton was convicted by a jury of Strangulation, Kidnapping in the Second Degree, and Burglary in the Second Degree. His convictions were affirmed by this Court on direct appeal.[1] In this appeal, Clanton asserts that his trial counsel provided ineffective assistance because counsel failed to request a jury instruction on lesser-included offenses for the Strangulation and Kidnapping charges. For the reasons

---

[1] *Clanton v. State*, 2017 WL 443728 (Del. Jan. 12, 2017).

that follow, we have concluded that the Superior Court's judgment should be affirmed.

(2)    The evidence presented by the State at Clanton's trial reflects the following version of events:  On the morning of November 29, 2014, Clanton accosted Nayyirah Thomas ("Thomas"), his ex-girlfriend, as she was leaving her apartment to go to work.  He forced her back into the apartment, where he kept her against her will for several hours.  He slapped the victim and choked her, and she testified that she lost consciousness and saw "black and blue."[2]  At one point during the ordeal, he slammed the victim up against the wall, causing damage to the wall. He forced her to call her employer to explain that she would not be reporting to work that day.  Two neighbors heard the victim screaming and begging her assailant not to kill her.  One of the neighbors called the police.

(3)    The officer who arrived at the apartment did not hear any noise coming from inside.  He knocked on the door, but Clanton would not allow the victim to answer.  The officer left.  In order to escape, the victim convinced Clanton that she wanted to be with him again, and she engaged in sexual intercourse with him. Eventually, Clanton left the apartment around 3 p.m.  Thomas ran to a neighbor's apartment where she called 911.

(4)    As previously mentioned, a Superior Court jury found Clanton guilty

---

[2] App. to Opening Br. at A32.

of Burglary in the Second Degree, Kidnapping in the Second Degree, and Strangulation. The jury acquitted Clanton of Home Invasion and Rape in the Second Degree.

(5) Clanton filed a *pro se* Rule 61 Motion for Postconviction Relief, claiming ineffective assistance of counsel under a number of theories. After reviewing Clanton's memorandum, his assigned counsel found that there was one valid claim for relief—trial counsel's failure to request instructions on lesser-included offenses for the Strangulation and Kidnapping charges. Clanton argued that his defense counsel was ineffective because a reasonable jury could have acquitted him of those two charges and instead found him guilty of Assault in the Third Degree on the Strangulation charge and Unlawful Imprisonment in the First or Second Degree on the Kidnapping charge. After briefing and an evidentiary hearing, in which trial counsel was the only witness, the Superior Court rejected Clanton's motion for postconviction relief. This appeal followed.

(6) We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[3] We review legal and constitutional questions *de novo*.[4]

---

[3] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013) (en banc).
[4] *Id.*

3

(7)     To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[5]  The defendant must prove that; (1) his trial counsel's performance was objectively unreasonable; and (2) his defense was prejudiced as a result.[6]  Under the first prong, judicial scrutiny is "highly deferential."[7]  Courts must ignore the "distorting effects of hindsight" and proceed with a "strong presumption" that counsel's conduct was reasonable.[8]  The *Strickland* Court explained that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[9]

(8)     Under the second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[10]  In other words, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."[11]  The movant "must make specific allegations of actual prejudice and substantiate them."[12]  These allegations must show "that there is a reasonable probability that, but for counsel's

---

[5] 466 U.S. 668, 687 (1984).
[6] *Id.* at 687-88, 691-92.
[7] *Id.* at 689.
[8] *Id.*
[9] *Id.* at 690.
[10] *Id.* at 693.
[11] *Strickland*, 466 U.S. at 693.
[12] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998) (en banc) (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996) (en banc), *cert. denied*, 517 U.S. 1249 (1996)).

4

unprofessional errors, the result of the proceeding would have been different."[13]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14]  "The 'reasonable probability' standard is less strict than the 'more likely than not' standard, but it requires more than a showing of a theoretical possibility that the outcome was affected."[15]  In sum, the defendant must prove actual prejudice.[16]

(9)    Further, *Strickland* does not require that we evaluate these prongs in any specific order.   As stated by the Court in *Strickland*, "The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[17]  Therefore, we will first evaluate whether defense counsel's failure to provide lesser included offenses at trial prejudiced Clanton's defense.

(10)   When defense counsel fails to request lesser-included offenses in the jury instructions, the defendant will be prejudiced if "a reasonable jury could find

---

[13] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).

[14] *Strickland*, 466 U.S. at 694.

[15] *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992), *cert. denied*, 507 U.S. 954 (1993) (citing *Strickland*, 466 U.S. at 693-94).

[16] *Strickland*, 466 U.S. at 693 ("[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice.").

[17] *Id*. at 697.

5

that the defendant was guilty of the lesser crime rather than the greater."[18] Therefore, the question here is whether there is a reasonable probability that the jury would have acquitted Clanton on the Strangulation and Kidnapping charges and convicted him on the lesser offenses. We believe that there is not a rational basis to find that defense counsel's performance prejudiced Clanton's defense.

(11) Under Delaware law, a person commits the crime of Strangulation "if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by applying pressure on the throat or neck of the other person."[19] Therefore, the State must prove three elements: (1) knowing or intentional action; (2) impeding breathing or blood flow; and (3) application of pressure to another's throat or neck. The appropriate lesser offense is the misdemeanor of Assault in the Third Degree, which occurs where "[t]he person intentionally or recklessly causes physical injury to another person."[20] Assault Third Degree requires proof of two elements: (1) intentional or reckless conduct and (2) causation of physical injury to another. Therefore, the distinguishing elements between these two offenses are whether Clanton intentionally applied pressure to Thomas's neck, which impeded her breathing.

---

[18] *Baynum v. State*, 211 A.3d 1075, 1083 (Del. 2019).
[19] 11 *Del. C.* § 607(a)(1).
[20] 11 *Del. C.* § 611(1).

(12) At trial, Thomas testified that while Clanton was in her apartment, she repeatedly pled for her life. She also testified that Clanton put his hand on her throat multiple times, causing her to see "black and blue" and lose consciousness.[21] A forensic nurse also testified at trial that Thomas's neck had redness and abrasions, and that Thomas told her that Clanton had "choked her" multiple times.[22] The only facts that Clanton now relies upon to undermine this evidence are that Thomas testified at trial that she had been talking and breathing throughout the alleged strangulation incidences. Clanton argues that a reasonable jury could not have believed that she had the ability to talk while Clanton restricted her breathing.[23] Clanton also attests that if he had actually put sufficient pressure on her throat for her to stop breathing, there would have been bruises instead of just redness and abrasions.[24] However, the forensic nurse testified that they do not often see those types of injuries with strangulation.

(13) At trial, defense counsel did not present any evidence or witnesses, but rather focused his efforts on pointing out inconsistencies in Thomas's testimony and attempting to undermine her credibility. Clanton argues here that a there was a rational basis for the jury to question Thomas's credibility.[25] However, there was

---

[21] App. to Opening Br. at A32.
[22] *Id*. at A45-46.
[23] Opening Br. at 16.
[24] *Id*. at 14.
[25] *Id.* at 15.

7

overwhelming evidence that Clanton intentionally restricted Thomas's breathing by applying pressure to her neck, and we do not find Clanton's arguments to the contrary to be persuasive. Not only did the jury consider Thomas's testimony, but also that of the forensic nurse and corroborating evidence from neighbors that Thomas was screaming and pleading for her life throughout the day. As the Superior Court noted below, "[f]or there to be a rational basis supporting a jury conviction on the lesser-included offense of Assault in the Third Degree, the jury would have had to ignore the uncontradicted evidence that the victim's breathing and blood flow were impeded."[26] Because there is not a rational basis to find that a jury would have acquitted Clanton of Strangulation and convicted on the lesser offense, the Superior Court did not abuse its discretion in denying postconviction relief on this basis.

(14) A person is guilty of Kidnapping Second Degree when the person unlawfully restrains another person with any one of six enumerated purposes, and the actor voluntarily releases the victim alive, unharmed, and in a safe place prior to trial.[27] At trial, it was argued that Clanton restrained Thomas for two purposes: (1) to inflict injury; and (2) to terrorize the victim.[28] The elements of this crime, therefore, are: (1) unlawful restraint; (2) for the purposes of inflicting physical injury or terrorizing the victim; and (3) pretrial release of the victim alive, unharmed, and

---

[26] *State v. Clanton*, 2022 WL 214557, at *4 (Del. Super. Jan. 25, 2022).
[27] 11 *Del. C.* § 783.
[28] Opening Br. at 17.

in a safe place. The lesser-included offense of Unlawful Imprisonment in the Second Degree requires a finding that the defendant knowingly and unlawfully restrained another person.[29] The lesser-included offense of Unlawful Imprisonment in the First Degree occurs if the knowing and unlawful restraint exposes the victim to the risk of serious physical injury.[30] Therefore, the distinguishing element is whether Clanton restrained Thomas with the purpose of terrorizing her or inflicting physical harm.

(15) At trial, the jury heard unrefuted testimony from Thomas that Clanton held her against her will for several hours and slammed her against a wall. This was corroborated by a hole in the wall and bruises on Thomas's back. Neighbors heard Thomas screaming throughout the day. The jury also heard the testimony and corroborating evidence relating to the strangulation incidences. The evidence clearly justifies a conclusion that Clanton unlawfully restrained Thomas for the purpose of physical injury or to terrorize.

(16) Clanton contends that the evidence contains a rational basis to find that Clanton lacked either purpose. He points to Thomas's credibility issues and the fact that over the several hours they were in the apartment, they did other activities besides fighting, including eating and having what he considered to be consensual

---

[29] 11 *Del. C.* § 781.
[30] 11 *Del. C.* § 782.

sex.[31]  This evidence, Clanton argues, points to an inference that his purpose was to rekindle their relationship, not terrorize or harm.[32]  This argument is unpersuasive. The great weight of the evidence supports the inference that Clanton's purpose was to terrorize Thomas and cause her harm.  There is not a reasonable probability that the jury would have acquitted him of Kidnapping and convicted on the lesser-included offenses.

(17)   Clanton also supports his arguments with language from *Beck v. Alabama*, in which the U.S. Supreme Court explained, "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction."[33]  Clanton contends that without the option of these lesser-included offenses, there is a substantial risk that the jury convicted Clanton on the charged offenses even though an element of the charged offenses was in doubt, because the jury assumed he was guilty of some crime.[34]  However, the record does not support the contention that the jury found Clanton guilty of Strangulation and Kidnapping despite having some doubt about an element of each offense.  The jury here actually acquitted Clanton of two charges, showing that they were willing to acquit if they believed an element of a crime was in question.  Further, as discussed, the evidence supporting a conviction

---

[31] Opening Br. at 17-18.
[32] *Id.*
[33] *Beck v. Alabama*, 447 U.S. 625, 634 (1980).
[34] Opening Br. at 11-12.

on these crimes was overwhelming. There is no reason to believe that the jury had any doubt about an element of either offense.

(18) Because we do not believe that there is a reasonable probability that the jury would have acquitted Clanton on the Strangulation and Kidnapping charges and convicted on the lesser-included offenses, we find that defense counsel's failure to include these instructions was not prejudicial to Clanton's defense. We therefore need not consider counsel's performance under the first *Strickland* prong.

NOW, THEREFORE, it is the order of the Court that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

11