IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAYMOND WARNCKE, | § | |
| | § | |
| Defendant Below, | § | No. 263, 2024 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2110003724 (K) |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: January 24, 2025
Decided: March 24, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## ORDER

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)     The appellant, Raymond Warncke, has appealed a Superior Court order adopting a Superior Court Commissioner's report and denying Warncke's motion for postconviction relief under Superior Court Criminal Rule 61. For the reasons discussed below, we affirm the Superior Court's judgment.

(2)     We previously described the events leading to Warncke's convictions as follows:

On October 8, 2020, Raymond Warncke, then 40-years-old, asked Tyrone Henry, a 71-year-old man, for a ride to the liquor store. Upon returning to the house where he was staying, Warncke grew violent,

repeatedly punching the older man in the face, refusing to calm down once police arrived, cursing the officers, resisting arrest, and kicking the door of one of the patrol vehicles. As a result, Warncke was charged with, and ultimately convicted of, assault on a person over 62 years of age, terroristic threatening, criminal mischief for "intentionally or recklessly caus[ing] damage in an amount less than $5,000[,]" and disorderly conduct. He was thereafter declared a habitual offender—he had previously been convicted of three violent felonies; aggravated menacing, resisting arrest, and rape in the fourth degree—and sentenced on the assault charge to 25 years at level V supervision suspended after 15 years for probation. Both the terroristic-threatening and criminal-mischief convictions resulted in one-year sentences suspended for one year of concurrent probation. And he was fined $575 for disorderly conduct.[1]

With the exception of the criminal-mischief conviction, which was remanded for resentencing as an unclassified misdemeanor, the Court affirmed Warncke's convictions and sentence on appeal.[2]

(3) On August 28, 2023, Warncke filed a timely motion for postconviction relief. He alleged that the Superior Court did not sentence him with an open mind and that his counsel was ineffective for failing to raise the victim's intoxication at trial and Warncke's mental health issues at sentencing. The Superior Court referred the matter to a Commissioner. Warncke filed a motion for appointment of counsel, which the Commissioner denied. The Commissioner also issued a briefing schedule.

(4) After his former counsel filed an affidavit in response to the allegations of ineffective assistance, Warncke filed an amended motion for

---

[1] *Warncke v. State*, 2023 WL 5028842, at *1 (Del. Aug. 8, 2023) (citations omitted).
[2] *Id.* at *1-2.

2

postconviction relief. He alleged that his counsel was ineffective for: (i) failing to object to the testimony of State witnesses concerning Warncke's use of racial slurs; (ii) talking him out of testifying; (iii) failing to communicate a plea offer to him; (iv) failing to challenge the State's petition to declare him a habitual offender; (v) failing to do anything for his defense; and (vi) failing to provide him with transcripts. The Commissioner permitted the amendment, but ordered that no further amendments would be allowed, absent extraordinary circumstances, unless Warncke notified the court within two weeks that he wished to file additional amendments. Warncke advised that he did not wish to file any additional amendments. The Commissioner issued a new briefing schedule.

(5) Following counsel's submission of an amended affidavit, the State's response, and Warncke's reply, the Commissioner issued a report recommending denial of the postconviction motions. The Superior Court accepted the Commissioner's recommendation and denied the postconviction motions. This appeal followed.

(6) We review the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[3] We review constitutional claims, claims of ineffective assistance of counsel, *de novo*.[4] The Court considers the procedural requirements of

---

[3] *Baynum v. State*, 211 A.3d 1075, 1082 (Del. 2019).
[4] *Id*.

3

Rule 61 before addressing any substantive issues,[5] but claims of ineffective assistance raised in a timely postconviction motion generally are not procedurally barred.[6] On appeal, Warncke argues that the Superior Court erred in ignoring the reply he filed in support of his postconviction motions and rejecting his postconviction claims. His arguments are without merit.

(7) The Superior Court Commissioner found that Rule 61(i)(4) barred Warncke's claim that the Superior Court had sentenced him with a closed mind because he had raised that claim on direct appeal and this Court rejected it.[7] Rule 61(i)(4) bars "[a]ny ground for relief that was formerly adjudicated…in an appeal" unless the movant pleads lack of jurisdiction, new evidence creating a strong inference of actual innocence, or a new rule of constitutional law retroactively renders the conviction invalid.[8] In his postconviction motions and reply, Warncke failed to plead any basis for overcoming the Rule 61(i)(4) procedural bar. Accordingly, the Superior Court did not err in rejecting Warncke's claim concerning his sentencing.

(8) We next turn to the Superior Court's denial of Warncke's claims of ineffective assistance. To prevail on an ineffective assistance of counsel claim, a

---

[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[6] *Green v. State*, 238 A.3d 160, 175 (Del. 2020).
[7] *Warncke*, 2023 WL 5028842, at *2 (holding that the Superior Court did not sentence Warncke with a closed mind).
[8] Super. Ct. Crim. R. 61(d)(2), (i)(4), (i)(5).

defendant must demonstrate that: (i) his counsel's representation fell below an objective standard of reasonableness; and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[9] There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[10] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[11]

(9) In rejecting Warncke's claim that his counsel was ineffective for failing to raise the victim's intoxication at trial, the Commissioner found that the record refuted this claim. Warncke's counsel cross-examined Trooper Jerome Williams about the victim telling the 911 operator that he had been drinking alcohol that day, the difficulty Trooper Williams had in obtaining a coherent statement from the victim, and how alcohol can make a statement less reliable. In her closing, Warncke's counsel emphasized that the victim told the 911 operator that he had been drinking. Contrary to his claim on appeal, Warncke's reply failed to demonstrate that his counsel acted unreasonably in raising the victim's intoxication or that there was a reasonable probability of a different outcome if she had handled it as Warncke preferred.

---

[9] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).
[10] *Id.* at 689.
[11] *Id.* at 694.

(10) As to Warncke's claim that his counsel was ineffective for failing to raise his mental health issues at sentencing, the sentencing transcript reflects that his counsel expressly referred the Superior Court to discussion of his substantial mental health history in the presentence investigation. As the Commissioner also emphasized, the Superior Court acknowledged Warncke's mental health history when it included a requirement in the sentencing order that he receive a mental health evaluation and comply with any treatment recommendations. Warncke's reply did not show that his counsel acted unreasonably in her handling of his mental health issues at sentencing or that he was prejudiced.

(11) Warncke, who is white, alleged that his counsel was ineffective for failing to object to witness testimony that he made racial slurs. The victim, who was black, and the victim's friend who pulled Warncke off the victim testified that Warncke was yelling at them that he wanted kill everybody and using the N-word. Trooper Williams testified that Warncke was initially calm, but when police took him into custody he became disruptive, started kicking out, and yelling curse words and the N-word at Trooper Williams. Warncke argued in his reply that there was no evidence he had used racial slurs because the N-word was not mentioned in the police report, but his counsel highlighted this on cross-examination and the police report described Warncke as repeatedly cursing and making derogatory comments that created a disturbance to the community. In her affidavit, Warncke's counsel

6

stated that the witnesses testified from personal knowledge and that she had no basis to object to their testimony concerning Warncke's racial slurs. The Commissioner found that Warncke had not shown that his counsel's strategic choice not to object was unreasonable and that he had failed to show that the outcome would have been different had his counsel objected.

(12) Even assuming Warncke's counsel acted unreasonably in not objecting to the testimony concerning Warncke's use of racial slurs, Warncke has not shown a reasonable probability that the outcome of the trial would have been different if his counsel had successfully objected. Absent the racial slurs, there was still substantial evidence that Warncke hit the victim, who was 71, and caused the victim's lip to bleed,[12] threatened to kill the victim,[13] created a risk of public alarm to others by shouting and cursing,[14] and damaged a police vehicle.[15] Warncke's reply did not demonstrate otherwise. The Superior Court did not commit reversible error in denying this claim of ineffective assistance.

---

[12] 11 *Del. C.* § 612(a)(6) (defining second-degree assault as recklessly or intentionally causing physical injury to someone over the age of 62).

[13] *Id.* § 621(a)(1) (providing that a person is guilty of terroristic threatening when they threaten to commit any crime likely to result in death or serious injury).

[14] *Id.* § 1301(1)(b) (defining disorderly conduct as intentionally creating a risk of public alarm to others by making an unreasonable noise, addressing someone with abusive language, or making an offensively coarse utterance).

[15] *Id.* § 811(a)(1) (providing that a person is guilty of criminal mischief when they intentionally or recklessly damage tangible property of another person).

(13) Nor did the Superior Court err in rejecting Warncke's claim that his counsel was ineffective for talking him out of testifying. As the Commissioner discussed in her report, the Superior Court conducted a colloquy with Warncke concerning his waiver of his right to testify. During this colloquy, Warncke stated under oath that he understood it was his choice whether to testify and that he chose not to testify. In addition to failing to show his counsel acted unreasonably, Warncke did not explain in his postconviction motion or reply how there was a reasonable probability of a different outcome if he had testified.

(14) Warncke also fails to show that the Superior Court erred in rejecting his claim that his counsel was ineffective for failing to communicate plea offers to him until Aril 27, 2022 and May 2, 2022. Warncke has provided no details concerning these plea offers, but the Superior Court docket reflects that there was a final case review with no plea on April 27th and a plea rejection colloquy on May 2nd. As the Superior Court Commissioner found, Warncke failed to show a reasonable probability of a different outcome if his counsel had communicated the plea offers to him sooner.

(15) As to Warncke's claim that his counsel was ineffective for failing to challenge the State's habitual offender petition, he did not identify any basis to challenge the petition in his amended postconviction motion. In his reply, Warncke conclusorily stated that he did not have the opportunity to rehabilitate as required for

8

habitual offender sentencing under 11 *Del. C.* § 4214. This Court has held that "some chance of rehabilitation" means only that "some period of time must have elapsed between sentencing on an earlier conviction and the commission of the offense resulting in the later felony conviction."[16] Warncke does not dispute that he had the necessary predicate convictions (aggravated menacing in 2016, resisting arrest with force in 2011, and fourth-degree rape or second-degree assault in 2002), the convictions arose out of separate events, and the convictions were separated by a period of time. Warncke has not shown that his counsel had any basis to challenge the habitual offender petition or a reasonable probability of a different outcome had she done so.

(16) In his amended motion, Warncke conclusorily alleged that his counsel failed to do anything for his defense and was unprepared for trial. His reply included more details concerning his belief that his counsel should have presented a defense of self-defense, but the record reflects that his counsel was prepared for trial. In addition, Warncke failed to show that there was a reasonable probability of a different outcome had his counsel argued that he acted in self-defense.[17]

(17) Finally, the Superior Court did not err in rejecting Warncke's claim that his counsel was ineffective for failing to provide him with trial transcripts. This

---

[16] *Eaddy v. State*, 1996 WL 313499, at *2 (Del. May 30, 1996).
[17] Warncke told the police that he hit the victim because the victim threatened him with a sword, but the police did not observe any sign of a sword.

9

Court has previously affirmed the denial of similar claims.[18] In addition, Warncke's counsel stated in her affidavit that trial transcripts were provided to the appellate unit for Warncke's direct appeal, but she did not know if the transcripts were provided to Warncke. Warncke's postconviction reply and briefs in this Court include pages from the trial and sentencing transcripts that were in the appendix for his opening brief on direct appeal so he clearly has access to transcripts from his trial. Warncke has not shown that he suffered any prejudice.

(18) For all the foregoing reasons, the Superior Court did not err in denying Warncke's claims for postconviction relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[18] *See, e.g., Nickerson v. State*, 2003 WL 21106527, at *1 (Del. May 12, 2003) (holding the appellant had not provided any "legal support for this claim that his counsel had an obligation to provide him with trial transcripts to pursue postconviction relief").