# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE )
)
v. )
)
HERBERT CLANTON, )
) Cr. ID. No. 1411018085
Defendant. )
)
)
)
)

Submitted: October 28, 2021
Decided: January 25, 2022

## MEMORANDUM OPINION

The Court has considered the Defendant's Motion for Postconviction Relief (the "Motion") and the relevant proceedings below. For the reasons discussed below, Defendant Herbert Clanton's Motion is hereby denied.

## BACKGROUND

On direct appeal, the Delaware Supreme Court, in its January 12, 2017 Order,[1] made the following findings.

> On the morning of November 29, 2014, Clanton accosted the victim [Nayyirah Thomas], who was his ex-girlfriend, as she was

---
[1] *Clanton v. State*, 2017 WL 443728 (Del.)

leaving her apartment to go to work. He forced her back into the apartment, where he kept her against her will for several hours. *He slapped the victim and choked her causing her to lose consciousness.* At one point during the ordeal, he slammed the victim up against the wall causing damage to the wall. He forced her to call her employer to explain that she would not be reporting to work that day. Two neighbors heard the victim screaming and begging her assailant not to kill her. One of the neighbors called the police.

The officer who arrived at the apartment did not hear any noise coming from inside. He knocked on the door, but Clanton would not allow the victim to answer. The officer left. In order to escape, the victim convinced Clanton that she wanted to be with him again, and she engaged in sexual intercourse with him. Eventually Clanton left the apartment around 3 PM. The victim ran to a neighbor's apartment where she called 911. The jury acquitted Clanton of Rape in the Second Degree and Home Invasion but convicted him of [Kidnapping in the Second Degree, Burglary in the Second Degree, and Strangulation].[2]

Clanton was sentenced on May 20, 2016, for the Kidnapping, Burglary, and Strangulation convictions. Clanton was declared an Habitual Offender pursuant to

---

[2] *Id*. at *1-2 (emphasis added).

11 *Del. C.* § 4214(a) regarding both the Kidnapping and Burglary convictions. He was sentenced to 15 years Level 5 incarceration for Kidnapping. He was sentenced to 8 years of Level 5 incarceration for Burglary. Clanton was sentenced to Level 5 incarceration for 5 years, suspended for 2 years of Level 3 supervision for Strangulation. The Supreme Court denied Clanton's appeal.

Clanton filed a Rule 61 Motion for Postconviction Relief on October 25, 2017. The Motion claimed ineffective assistance of counsel under a variety of theories. Counsel was appointed. On August 27, 2018, Counsel filed a Motion to Withdraw as Counsel. Counsel stated that after a thorough review of the record, he was unable to find any meritorious claims for relief. Clanton filed a memorandum in opposition to the Motion to Withdraw.

Clanton then filed an Amended Motion. The State filed an Amended Response. Clanton replied. The Motion was then assigned to the Superior Court Commissioner pursuant to 10 *Del. C.* § 512(b) and Superior Court Criminal Procedure Rule 62.

The Commissioner ordered new Defense Counsel to submit a "focused and very specific brief that only addresses the Defendant's arguments that [Counsel] finds to have merit." The assigned Commissioner subsequently was appointed as a Court of Common Pleas Judge. The pending motion reverted to the assigned Superior Court Judge.

Defense counsel argues:

Mr. Clanton is entitled to postconviction relief on the basis that his trial counsel failed to consider or request that the jury be given instructions on lesser-included offenses when it was given instructions on the Kidnapping in the Second Degree and Strangulation charges. There is a reasonable probability that, had such instructions been provided, the jury would have convicted Mr. Clanton of the lesser-included charges based on the evidence presented at trial. As such, Mr. Clanton's motion for postconviction relief should be granted and a retrial ordered.

Mr. Clanton's remaining claims for postconviction relief lack merit for the reasons set forth above and as noted in the August 2018 Memorandum in Support of Motion to Withdraw as Counsel and the September 2019 Motion for Postconviction Relief previously filed in this case.

The Court held an evidentiary hearing on September 28, 2021.

## ANALYSIS

### *Claims*

Defendant originally raised six arguments in his Rule 61 Motion: (1) Trial Counsel failed to request an instruction on the lesser-included offenses of Unlawful Imprisonment in the 1st Degree and Assault in the 3rd Degree; (2) Counsel failed to subpoena and secure witnesses and request a continuance; (3) Counsel failed to investigate the scene of the crime; (4) Counsel failed to investigate, interview and impeach defense and state witnesses; (5) Counsel failed to consult with the Defendant prior to trial; and (6) Counsel failed to object to jury instructions, testimony, and prosecution remarks.

4

### *Claims Two through Six*

Prior to addressing the substantive merits of any claim for postconviction relief, the Court first must determine whether the defendant has met the procedural requirements of Superior Court Criminal Rule 61.[3] If a procedural bar exists, then the claim is barred, and the Court should not consider the merits of the postconviction claim.[4]

Criminal Rule 61 provides that the motion must be filed within one year after the conviction becomes final;[5] defendant cannot bring repetitive motions;[6] defendant cannot raise any ground for relief not raised in proceedings leading to the conviction;[7] and defendant cannot raise any ground for relief that was formerly adjudicated prior to the conviction.[8] If Defendant is otherwise barred under Rule 61(i)(1), (2), (3), or (4), Rule 61(i)(5) lifts the bars to relief if the Court lacked jurisdiction or the claim pleads new evidence that creates a strong inference of innocence.[9]

Defendant's appeal was denied on January 12, 2017. His Motion for Postconviction Relief was filed on October 25, 2017. Therefore, Defendant's

---

[3] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[4] *Id.*
[5] Super. Ct. Crim. R. 61(i)(1).
[6] *Id.* 61(i)(2).
[7] *Id.* 61(i)(3).
[8] *Id.* 61(i)(4).
[9] *Id.* 61(i)(5).

Motion is timely. Rule 61(i)(2) is inapplicable because this is Defendant's first Motion for Postconviction relief.

Rule 61(i)(4) is inapplicable. Defendant was convicted and has not raised any claims which were previously adjudicated. Rule 61(i)(5) is inapplicable. Defendant has not shown the Court lacked jurisdiction over any of his claims. Defendant has not shown any new evidence that would demonstrate he is factually innocent.

Rule 61(i)(3) bars Claims two through six. Defendant did not introduce the stated grounds for relief at the time of sentencing or on direct appeal. Defendant failed to show cause for the default or any specific prejudice. Thus, Defendant's claims two through six are procedurally barred under Rule 61.

### *Lesser-Included Offenses*

Defendant's first claim can be construed as a claim for ineffective assistance of counsel. This claim is the only claim properly raised in a motion for postconviction relief. To prevail on this claim, Defendant must establish: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a "reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would a have been different."[10]

---

[10] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

"To show that there was a 'reasonable probability' of a different outcome to satisfy *Strickland's* prejudice prong, a defendant must demonstrate more than a mere 'conceivable' chance of a different result."[11] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[12] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that Counsel's conduct fell within a wide range of reasonable professional assistance.[13]

The Court must determine if there is a rational basis supporting a jury conviction on lesser-included offenses. "[I]n order to give an instruction on a lesser included offense, the trial court must be satisfied that 'the evidence introduced in the case ... support[s] a jury verdict convicting [the] defendant of the lesser crime *rather than* the indicted crime.'"[14]

The charge of Strangulation requires the State to prove that Defendant "knowingly or intentionally impeded the breathing or circulation of blood of another person by applying pressure to the throat or neck of the other person." [15] Assault in the Third Degree is the relevant lesser-included offense. A defendant is guilty of Assault in the Third Degree when: (1) defendant intentionally or

---

[11] *Baynum v. State*, 211 A.3d 1075, 1084 (Del. 2019).
[12] *Id.*
[13] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988); *Salih v. State*, 2008 WL 4762323, at *1 (Del.).
[14] *White v. State*, 173 A.3d 78, 83 (Del. 2017)(quoting *Baker v. State,* 1993 WL 557951, at *6 (Del.)).
[15] 11 Del. C. § 607.

7

recklessly causes physical injury to another person; or (2) with criminal negligence defendant causes physical injury to another person by means of a deadly weapon or a dangerous instrument.[16]

The charge of Kidnapping in the Second Degree requires the State to prove that the defendant unlawfully restrained another person with any of the following purposes:

> (1) To hold the victim for ransom or reward; or (2) To use the victim as a shield or hostage; or (3) To facilitate the commission of any felony or flight thereafter; or (4) To inflict physical injury upon the victim, or to violate or abuse the victim sexually; or (5) To terrorize the victim or a third person; or (6) To take or entice any child less than 18 years of age from the custody of the child's parent, guardian or lawful custodian; and the actor voluntarily releases the victim alive, unharmed and in a safe place prior to trial.[17]

Unlawful Imprisonment in the First or Second Degree are the relevant lesser-included offenses. A defendant is guilty of Unlawful Imprisonment in the First Degree when defendant knowingly and unlawfully restrains another person under circumstances which expose that person to the risk of serious physical injury.[18] A defendant is guilty of Unlawful Imprisonment in the Second Degree when defendant knowingly and unlawfully restrains another person.[19]

---

[16] 11 Del. C. § 611.
[17] 11 Del. C. § 783.
[18] 11 Del. C. § 782.
[19] 11 Del. C. § 781.

Defendant argues there was a reasonable probability a jury would have convicted Defendant of the lesser-included offenses had the instruction been provided.

Defendant relies on *White v. State*[20] to argue a reasonable probability of prejudice. In *White,* counsel's refusal to request a lesser-included offense instruction was based on a mistaken understanding of the statute, rather than on trial strategy.[21] *White's* Counsel conceded that he failed to consider the gap between physical injury and death.[22] "[T]rial counsel conceded he acted without a tactical purpose, and there is no plausible tactical reason for failing to request the instruction. Thus, counsel's performance fell below an objective standard of reasonableness for purposes of *Strickland.*"[23]

### *Strangulation*

The standard for giving a Strangulation lesser-included offense instruction is whether there is a rational basis supporting the jury's conviction on the lesser-included offense(s). The victim testified at trial that she repeatedly pled with the Defendant, saying: "Don't choke me." She further testified that the Defendant placed his hands on her throat numerous times. Sufficient pressure was applied

---

[20] 173 A.3d at 83.
[21] *Id.* at 82.
[22] *Id.* at 81.
[23] *Id.* at 80.

that the victim saw "black and blue." The forensic nurse testified that she found redness and abrasions around the victim's neck. The victim later developed two black eyes. There was no trial evidence or testimony presented in opposition to these factual statements.

The Court finds that this evidence supports a conviction on the charge of Strangulation. There was unrefuted evidence that the victim's breathing was impeded and that the Defendant acted intentionally when he placed his hands around her neck and applied pressure sufficient to cause the victim to see black and blue, and resulting in redness, abrasions, and two black eyes. The reasonable and logical inference is that Defendant intended to impede her breathing or blood flow. For there to be a rational basis supporting a jury conviction on the lesser-included offense of Assault in the Third Degree, the jury would have had to ignore the uncontradicted evidence that the victim's breathing and blood flow were impeded.

During the September 28, 2021 evidentiary hearing, Counsel testified and admitted to being ineffective. However, Counsel also testified that he thought the State had considerable evidence regarding the Kidnapping and Strangulation charges. Counsel recognized the strength of the State's case. He felt the State had proven the Strangulation, Burglary in the Second Degree, and Kidnapping in the Second-Degree. Counsel believed the victim to be credible. His strategy was to focus on acquittals on the remaining charges—Rape and Home Invasion. That

decision benefitted Defendant, particularly resulting in acquittal for the serious charge of Rape in the Second Degree, which carries a substantial minimum mandatory sentence.

The sexual assault nurse examiner attested at trial that she found redness and abrasions on the neck of the victim. Counsel believed this testimony, in conjunction with the victim's, would lead to a conviction. Counsel informed Clanton that he thought the victim testified well and that she was not impeached by cross-examination.

Counsel considered the corroborating evidence of the arriving officer and neighbors who heard the commotion. Counsel thought the State had proved the Strangulation and Kidnapping charge beyond a reasonable doubt. Counsel believes he was not prompted to consider lesser-included offenses.

The Court finds that Counsel's decision not to request to not request lesser-included offenses for the Strangulation charge was not objectively unreasonable.

In *Beck v. Alabama*,[24] the United States Supreme Court discussed the policy underlying lesser-included offense instructions. "Providing the jury with the 'third option' of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable doubt standard."[25] Defendant relies

---

[24] 447 U.S. 625 (1980).
[25] *Id.* at 634.

on *Beck* in arguing that without the option of a lesser-included offense, there may be a substantial risk that a jury will deviate from legal theory and not bestow the full benefit of reasonable doubt in cases where one element of a charge is in dispute, but think the Defendant is guilty of some crime.

The State counters that the jury would not have convicted if they thought an element of the charge had not been met. The jury did acquit Defendant of two offenses, taking into consideration some of the inconsistencies by the victim and witnesses at trial.

"A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by applying pressure on the throat or neck of the other person."[26] Strangulation requires that the victim's breathing or blood circulation to be impeded.[27] It is not necessary to prove intent to cut off breath completely. The indictment alleges: "Herbert Clanton, on or about the 29th day of November, 2014, in the County of New Castle, State of Delaware, did knowingly or intentionally, impede the breathing or circulation of blood of Nayyirah Thomas by applying pressure on her throat or neck."

---

[26]11 Del. C. § 607.
[27] 11 Del. C. § 607.

Defendant argues that the jury could find Defendant intended to apply pressure to the victim's throat but did not intend to impede the victim's breathing or circulation.  Further, Defendant argues the State must prove separate intent for applying pressure and impeding breathing or circulation.  The victim testified she was screaming.  However, Counsel conceded that talking while being suffocated is plausible.

The Defendant failed to present any authority supporting Defendant's argument.  The facts support a reasonable inference that Defendant intended to impede the breathing of the victim by putting his hands around her neck.  There is no other rational interpretation of the facts.

In *Stevenson v. United States*,[28] the Supreme Court of the United States found:

> A judge may be entirely satisfied, from the whole evidence in the case, that the person doing the killing was actuated by malice; that he was not in any such passion as to lower the grade of the crime from murder to manslaughter by reason of any absence of malice; and yet, if there be any evidence fairly tending to bear upon the issue of manslaughter, it is the province of the jury to determine from all the evidence what the condition of mind was, and to say whether the crime was murder or manslaughter.[29]

This Court finds no evidence fairly tending to bear upon the issue of a lesser-included offense.  The jury took all evidence into consideration and

---

[28] 162 U.S. 313 (1896).
[29] *Id.* at 323.

determined Defendant's state of mind satisfied the charge of Strangulation. The jury's findings were affirmed by the Delaware Supreme Court.

### *Kidnapping*

The evidence supports a finding of Kidnapping in the Second Degree. Defendant forced the victim back into her apartment as she was leaving. The victim testified that Defendant held her against her will for several hours, slamming her against the wall and brandishing a knife. This testimony is corroborated by physical evidence of a hole in the wall, as well as bruises to her back. Neighbors heard the victim begging for her life. These pleas were sufficiently credible that one neighbor called the police. While still in the apartment, the victim was prevented from responding to an investigating police officer. Upon being released by Defendant, the victim immediately sought assistance from a neighbor and called 911.

The distinction between Kidnapping and the Unlawful Imprisonment lesser-included offenses is the purpose of the restraint. Something more than simple restraint is required for Kidnapping, such as restraint for the purpose of inflicting physical injury or terrorizing the victim. The evidence of the victim's physical injuries and terror were uncontradicted at trial.

A logical inference can be made between the victim's injuries and Defendant's intent. The logical inference—that his intent was to inflict physical

injury to the victim and to terrorize her—does not support a rational basis to instruct for lesser-included offenses.

## **CONCLUSION**

The facts presented to the jury at trial support no rational basis for instructing on lesser-included offenses. The evidence supports a finding of Strangulation. It can be reasonably inferred that defendant intended to impede the breathing or blood circulation of the victim by putting his hands around her neck. To convict on a lesser-included offense, the jury would have had to ignore the uncontradicted testimony and corroborating physical evidence. There is no other rational interpretation of the facts. The evidence also supports a finding of Kidnapping in the Second Degree. The victim's physical injuries are unrefuted. A logical inference can be made between Defendant's intent to inflict physical injury and to terrorize, which distinguish Kidnapping from any lesser-included offense.

The question is whether there is a rational basis supporting the jury's conviction on the lesser-included offense(s). "In order to give an instruction on a lesser included offense, the trial court must be satisfied that 'the evidence introduced in the case ... support[s] a jury verdict convicting [the] defendant of the lesser crime rather than the indicted crime.'"[30]

---

[30] *White*, 173 A.3d at 83.

15

The evidence was all or nothing. Regarding the Strangulation charge, if the jury found beyond a reasonable doubt Defendant impeded the breathing or blood flow of the victim by putting his hands around her neck and did so intentionally, an instruction for a lesser-included Assault offense was not appropriate. Regarding the charge of Kidnapping in the Second Degree, if the jury found beyond a reasonable doubt Defendant intended to inflict physical injury upon the victim or to terrorize her, an instruction for lesser-included Unlawful Imprisonment offenses was not appropriate.

**THEREFORE**, Defendant's Motion for Postconviction Relief is hereby **DENIED**.

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*
The Honorable Mary M. Johnston

16