# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                                  )
        v.                 )      I.D. No.: 1702013025 & 1702012586
                                    )
ANTHONY E. MORRIS,       )
                                    )
     Defendant.         )
                                    )

March 31, 2022

*Upon Petitioner's Motion for Postconviction Relief*
**GRANTED.**

## <u>MEMORANDUM OPINION</u>

Casey L. Ewart, Deputy Attorney General, Department of Justice, Georgetown, Delaware. *Attorney for the State.*

Christopher S. Koyste, Esquire, Law Office of Christopher S. Koyste, LLC., Wilmington, Delaware. *Attorney for the Petitioner.*

**Robinson, J.**

## I.   INTRODUCTION

Anthony E. Morris ("Morris") filed an Amended Motion for Postconviction Relief ("Motion") pursuant to Superior Court Criminal Rule 61(a)(1) ("Rule 61") challenging his conviction after a jury trial in Superior Court. His Motion raises one claim: that trial counsel ("Counsel") was ineffective for failing to request that the jury instructions include lesser-included offenses for the charge of Home Invasion. I find that Counsel's failure to request the instruction was objectively unreasonable and caused prejudice to Morris under *Strickland v. Washington*.[1] The thirteen remaining convictions stand, as Morris has not established ineffective assistance of counsel or prejudice for any of those convictions. My reasoning follows.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Morris's charges stem from three separate incidents. The first incident occurred on February 18, 2017. Seaford Police responded to a motel to investigate a domestic incident occurring in the parking lot.[2] As the officer pulled up, he saw Morris standing at the open driver's side door of a car and saw Jennifer Middleton ("Middleton") in the driver's seat with her legs pointed out of the vehicle. According to the officer, "Morris appeared to be standing in between her legs so that she

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984).
[2] These facts have largely been taken from Supreme Court's decision on Morris's appeal. *Morris v. State,* 210 A.3d 724 (Del. 2019).

couldn't get out."[3] As the officer approached, Morris looked at the officer, looked back at Middleton, and then struck her in the face with his open hand. The officer immediately pulled Morris off Middleton and placed him under arrest. Middleton testified that prior to the arrival of officers, Morris shattered one of the windows of her new car, tore up her cash, and punched her face multiple times. The injuries from this altercation left Middleton's lips bleeding and swollen, and her left eye swollen.

The police arrested Morris and charged him with Assault Third Degree, Kidnapping First Degree, misdemeanor Theft, and misdemeanor Criminal Mischief. A Justice of the Peace Court magistrate arraigned Morris and imposed unsecured bail with a condition that Morris have no contact with Middleton. Morris was released from the Seaford Police Department at 12:14 p.m. after the no-contact order was explained to him and he indicated he understood it. An officer called Middleton, who had returned to her apartment in Laurel, and informed her of Morris's release and the no-contact order that was now in place.

The second incident occurred shortly thereafter. According to Middleton, Morris went to Middleton's apartment and began kicking her front door and demanding to be let inside. Middleton did not want him in her apartment, but she also did not want him to kick in her door. She testified she was concerned with the noise and afraid someone might report the incident to her landlord, so she opened

---

[3] App. to Pet'r. Am. Mot. for Postconviction Relief, D.I. 142, at A110.

the door. Morris entered her apartment, accused her of getting him in trouble, and started punching her face. Middleton testified that she "tried to run upstairs so [she] could lock the door,"[4] and she attempted to block his strikes to her face. Middleton testified that Morris choked her with his hands so she could not breath, although she could not remember when during the altercation this choking occurred.[5] Middleton said that she tried to get away but fell over a loveseat and that Morris then grabbed her and threw her to the couch. She testified that she was kicking Morris and attempting to push him off. She said that Morris then took off her underwear and pulled down his pants. She repeatedly told him to stop. She tried to get up, but he was on top of her and held her down. He then began having sexual intercourse with her, while she continued telling him to stop. He eventually stopped, and she got up and ran upstairs to the bathroom, locked the door, and took a bath. Morris left her apartment. Middleton told the jury that she was left with bruises all over her arms, an even more swollen left eye, and a swollen lip. Middleton also told the jury that she believed Morris kept his shoes on throughout the entire encounter—the relevance of which will be explained later.[6]

After her bath, Middleton called the police. Police officers arrived and Middleton was taken by ambulance to a hospital. At the hospital, Nurse Rachael

---

[4] *Id.* at A172.
[5] *Id.* at A178.
[6] *Id.* at A194.

Cartwright ("Cartwright") conducted a forensic examination. She photographed Middleton's injuries and conducted a vaginal examination where she observed white fluid consistent with semen. Detective Christopher Story ("Story"), the chief investigating officer, went to Middleton's apartment to take photographs of the scene at approximately 7:45 p.m. that same day. For the incidents at Middleton's apartment, Morris was charged with Home Invasion, Rape First Degree, Strangulation, Assault Second Degree, and two counts of Non-Compliance with Bond.

While Morris was incarcerated awaiting trial, he made various attempts to contact Morris. These attempts were the basis of the third set of charges: four counts of Non-Compliance with Bond, two counts of Act of Intimidation, and Conspiracy Second Degree.

Morris's trial took seven days, beginning April 23 and ending May 3, 2018. At the conclusion of the State's case-in-chief, the Court dismissed the charge of Kidnapping, finding insufficient independent evidence to support that charge.[7] The Court also reduced the charge of Assault Second Degree related to the incident at Middleton's apartment, to Assault Third Degree. Morris presented no witnesses.

At the trial's prayer conference, Counsel did not request any lesser-included offense instructions for the charge of Home Invasion. When the Court asked about

_____

[7]*Id.* at A20.

4

such instructions, Counsel responded, "I have none on the home invasion."[8] Counsel did, however, request a lesser-included offense instruction of Rape Second Degree on the charge of Rape First Degree. The Court denied the request, ruling that the evidence and "posture of the case" were insufficient to establish a rational basis for a lesser-included offense of Rape Second Degree. Counsel did not argue for any other lesser-included offenses. The Court included an alibi instruction as part of jury instructions.

In closing arguments, Counsel asserted several arguments. She argued that: (1) there was no evidence of a violent crime happening in the living room, (2) there were no dents in the door, and (3) the neighbors did not see or hear anything. Counsel argued the rape never occurred, relying on testimony from Cartwright, the forensic nurse, that Middleton did not have any injuries in her pelvic region. Lastly, Counsel argued that Middleton was using these accusations to get back at Morris, as, Middleton admitted, she had done in the past.

The jury acquitted Morris of Strangulation and could not reach a verdict on the charge of Rape First Degree.[9] The jury found Morris guilty of all the other offenses, including Home Invasion.

---

[8] *Id.* at A394.

[9] The State later entered a *Nolle Prosequi* on this charge. However, it warned Morris that if any of his convictions were overturned on appeal or through post-conviction relief, it would retry him on this charge. Prior to issuance of this decision, I asked post-conviction counsel to confirm with Morris that he was willing to accept this risk if he proceeded with post-conviction relief. Post-

This Court sentenced Morris to twelve years of incarceration—ten years of which was on the charge of Home Invasion—followed by decreasing levels of supervision.

Morris appealed his convictions and sentence to the Delaware Supreme Court, which affirmed his convictions and sentence in May of 2019.[10]

Morris filed a *pro se* motion for postconviction relief and a motion for the appointment of counsel on August 29, 2019. This Court appointed postconviction counsel who filed an Amended Motion for Postconviction Relief on April 9, 2021.

Counsel submitted an affidavit regarding Morris's Motion. Counsel asserts in the affidavit that it was an oversight to not request the lesser-included jury instructions: "I did not make a conscious, thoughtful decision not to request jury instruction on lesser included charges because I never even considered them. It was an oversight and was never discussed with Mr. Morris."[11] Later, in an email to postconviction counsel, Counsel also stated: "I never looked at it as an all or nothing proposition."[12]

III.    **PARTIES' CONTENTIONS**

conviction counsel confirmed that Morris wanted to proceed with this Motion knowing that if he was successful, the State intended to retry him for Rape First Degree.
[10] *Morris v. State,* 210 A.3d 724 (Del. 2019).
[11] Trial Counsel's Aff., D.I. 143, ¶ 3.
[12] Pet'r. Ex. D., D.I. 148.

6

Morris's petition presents a single claim: that Counsel was ineffective for failing to request lesser-included offense instructions on the charge of Home Invasion,[13] specifically Burglary Second Degree,[14] Criminal Trespass First Degree,[15] and Criminal Trespass Third Degree.[16] Morris maintains that lesser-included offense instructions probably would have changed the outcome of the trial because there was sufficient evidence to support the lesser charges. Morris argues Counsel's failure to request the lesser-included instructions amounts to a violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution and his rights under Article I, § 7 of the Delaware Constitution.

The State argues that Counsel made a strategic decision to not pursue a lesser-included offense instruction because Counsel was pursuing an "all-or-nothing"

---

[13] 11 *Del C.* § 826A(a) (2017) (REPEALED): "A person is guilty of home invasion when the person knowingly enters or remains unlawfully in a dwelling with intent to commit a violent felony therein, and: (1) that dwelling is occupied by another person who is not a participant in the crime; and (2) when, in effecting entry or when in the dwelling or in immediate flight therefrom, the person or another participant in the crime engages in the commission of, or attempts to commit, any of the following felonies: a. Robbery in any degree; b. Assault in the first or second degree; c. Murder in any degree; d. Manslaughter; e. Rape in any degree; f. Kidnapping in any degree; and (3) When, in effecting entry or when in the dwelling or in immediate flight therefrom, the person or another participant in the crime: Is armed with explosives or a deadly weapon; or b. Causes physical injury to any person who is not a participant in the crime."

[14] 11 *Del. C*. § 825 (Effective: to Sept. 15, 2019): "A person is guilty of burglary in the second Degree when the person knowingly enters or remains unlawfully: (1) In a dwelling with intent to commit a crime therein; or (2) In a building and when, in effecting entry or while in the building or in immediate flight therefrom, the person or another participant in the crime: a. Is armed with explosives or a deadly weapon; or b. Causes physical injury to any person who is not a participant in the crime."

[15] 11 *Del. C*. § 823: "A person is guilty of criminal trespass in the first degree when the person knowingly enters or remains unlawfully in a dwelling . . .."

[16] 11 *Del. C*. § 821: "A person is guilty of criminal trespass in the third degree when the person knowingly enters or remains unlawfully upon real property."

strategy and a lesser-included offense instruction would have undermined that strategic decision. The State relies on *Allison v. State*[17] and *Robertson v. State*[18] to argue that Counsel's strategy is entitled to deference under the *Strickland* standard. Alternatively, the State contends there was no prejudice to Morris because if Counsel had requested such an instruction, the Court would have not issued it for lack of a rational basis in the evidence—as it did when it denied Counsel's request for a lesser-included offense on the charge of Rape First Degree.

## IV.    **DISCUSSION**

### A. **Preliminary Procedural Considerations**

This Court must first determine if there are any procedural bars to a motion for postconviction relief before considering the merits of the claims.[19] Generally speaking, Rule 61 imposes four procedural bars on such motions: (1) the motion must be brought within one year after the judgment of conviction is final; (2) any basis for relief must not have been asserted in prior postconviction relief proceedings; (3) any basis for relief not asserted in the proceeding below as required by the court rules is subsequently barred unless defendant can show cause and

---

[17] 5 A.3d 629, 2010 WL 3777919 (Del. Sept. 24, 2010) (TABLE).
[18] 38 A.3d 1255, 2012 WL 628001 (Del. Feb. 27, 2012) (TABLE).
[19] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

8

prejudice; and (4) any ground for relief that was formerly adjudicated is thereafter barred.[20]

Morris's postconviction motion is timely and the issues it raises have not been formerly adjudicated. This is Morris's first motion under Superior Court Criminal Rule 61.[21] The other procedural bars likewise do not apply because colorable claims of ineffective assistance of counsel are properly presented by way of a motion for postconviction relief.[22] The fact that counsel did not raise an argument or objection during the trial, or on appeal, does not bar a defendant from alleging that counsel's failure amounted to ineffective assistance.[23] Morris's Motion, therefore, is not procedurally barred and I may consider it on its merits.

## B. <u>Standard of Review</u>

To prevail on a claim of ineffective assistance of counsel, Morris must meet the two-pronged test established by the United States Supreme Court in *Strickland v. Washington*.[24] First, Morris must show that his counsel's representation fell below

---

[20] Super. Ct. Crim. R. 61(i).

[21] Defendant's first motion, having been filed within one year of the Supreme Court's decision on direct appeal, is timely. Super. Ct. Crim. R. 61.

[22] *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Apr. 28, 2016); *State v. Evan–Mayes*, 2016 WL 4502303, at *2 (Del. Super. Ct. Aug. 25, 2016).

[23] *See Green v. State,* 238 A.3d 160, 175 (Del. 2020); *Malloy v. State,* 2011 WL 1135107, at *2 (Del. Mar. 28, 2011); *Brodie v. State*, 2011 WL 927673, at *1 (Del. Super. Ct. Mar. 17, 2011); *State v. Ross*, 2004 WL 2735515, at *2 (Del. Super. Ct. Nov. 22, 2004).

[24] 466 U.S. 668, 688, 694 (1984).

an objective standard of reasonableness.[25] Second, that there is a reasonable probability the outcome of the proceedings would have been different but for counsel's unprofessional errors.[26] If Morris fails on either of these prongs it will result in a denial of the motion.

Although not insurmountable, the *Strickland* standard regarding the first prong is highly demanding and leads to a strong presumption that the representation was professionally reasonable.[27] A defendant must show that any alleged errors were so serious that his counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.[28] Great weight and deference is given to the tactical decisions of trial counsel.[29] The reviewing court must avoid viewing counsel's conduct through the distorting lens of hindsight, but instead must examine the conduct from the counsel's perspective at that time.[30] However, where the record establishes that counsel's decision was not a strategic choice, then counsel is not entitled to this presumption of deference set forth in *Strickland*.[31]

Regarding the second prong of *Strickland,* the reviewing court will not set aside the conviction if the error, however unreasonable, had no effect on the

---

[25] *Id.*

[26] *Id.*

[27] *Flamer v. State*, 585 A.2d 736, 753 (Del.1990).

[28] *State v. Finn,* 2012 WL 1980666, at *4 (Del. Super. Ct. May 23, 2012).

[29] *State v. Miller*, 2013 WL 871320, at *4 (Del. Super. Ct. Feb. 26, 2013).

[30] *State v. Wright*, 632 A.2d 288, 295 (Del Super. Ct. 1994).

[31] *Breakiron v. Horn*, 642 F.3d 126, 138 (3d Cir. 2011) (citing *Strickland*, and *Thomas v. Varner*, 428 F.3d 491, 499–500 (3d Cir. 2005)).

10

outcome.[32] To show prejudice, the defendant must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[33] Further, the likelihood of a different result "must be substantial, not just conceivable."[34] In the context of lesser-included offense instructions, the reviewing court may find that the second prong of *Strickland* has been met where a reasonable jury could acquit on the greater offense and convict on the lesser offense.[35] "[W]here a reasonable jury could find that the defendant was guilty of the lesser crime rather than the greater, failure to request lesser-included instruction is prejudicial and warrants postconviction relief in the form of a new trial."[36]

### C. **Merits of the Claim**

This Court faces two questions: (1) did Counsel's failure to request a lesser-included offense instruction fall below an objective standard of reasonableness or was it part of a valid trial strategy, and (2) if not part of a valid trial strategy, was it prejudicial?

---

[32] *Strickland*, 466 U.S. at 692.
[33] *Id.* at 687.
[34] *Id.* at 697.
[35] *Baynum v. State*, 211 A.3d 1075, 1083 (Del. 2019) (*see also White v. State,* 173 A.3d 78 (Del. 2017)).
[36] *Id.*

11

1. **Did Counsel's failure to request a lesser-included offense fall below an objective standard of reasonableness or was it based on valid trial strategy?**

The Delaware Supreme Court recently held that "where a reasonable jury could find that the defendant was guilty of the lesser crime rather than the greater, failure to request a lesser-included instruction is prejudicial and warrants postconviction relief in the form of a new trial."[37] As stated in *Brooks,* "[c]ounsel who forgets to request an instruction that could help his client fails to meet an objective standard of reasonableness."[38] However, where there is a decision by counsel to not request a lesser-included offense instruction based on a valid trial strategy—that is, if such a request would be inconsistent with the defense's valid strategy and theory of the case—that decision is entitled to deference.[39]

In certain cases, trial counsel may choose to pursue an "all-or-nothing" approach and choose not to request a lesser-included offense instruction. This approach is a valid trial strategy and deserves deference.[40] If there is such an all-or-nothing strategy in this case, then there is no ineffective assistance under *Strickland* because Morris's claim fails the first prong of the *Strickland* standard.[41]

---

[37] *Id.*

[38] *Id.* (citing *Brooks v. State,* 40 A.3d 346, 354 (Del. 2012)).

[39] *Allison*, 2010 WL 3733919 at *2 (finding counsel was not ineffective for not requesting a lesser-included offense instruction because it would have been inconsistent with the defendant's actual innocence defense).

[40] *Id.*

[41] *Id.*

Under the facts of this case, I find there was no valid trial strategy pursued by Counsel when Counsel failed to request a lesser-included offense instruction for the charge of Home Invasion. First, Counsel states in her affidavit that her failure to request a lesser-included offense instruction regarding Home Invasion was not the result of a conscious, thoughtful decision, but was an "oversight."[42] Counsel explicitly states in an email to postconviction counsel that it was never "an all or nothing proposition."[43]

Furthermore, during the trial's prayer conference, Counsel requested a lesser-included offense instruction as to the charge of Rape First Degree, which was charged as part of the same incident as the Home Invasion charge. Counsel's request for this lesser-included offense instruction shows she was not pursuing an all-or-nothing strategy. Counsel could not simultaneously advance an all-or-nothing strategy as to the charge of Home Invasion while requesting a lesser-included offense instruction for Rape First Degree, one of the bases of the Home Invasion charge. It matters not that this request was ultimately denied by the Trial Court.[44]

---

[42] I recognize that Counsel's statements in her affidavit are not the beginning and end of the inquiry as to trial strategy, as many attorneys may take a hands-off approach on Rule 61 affidavits to better protect their former clients' interests. *See, e.g., White v. State*, 173 A.3d 78, 81 n. 16 (Del. 2017) ("We are aware of legitimate concerns on the part of the state and trial judges that trial counsel sometimes fault their own performance in the Rule 61 context, in situations when their confession of failing to live up to their duties seems strained and inconsistent with the record.").

[43] Pet'r. Ex. D., D.I. 148.

[44] I note that the discussion of the charge of Rape First Degree only came after the discussion for the charge of Home Invasion. Therefore, Counsel was not dissuaded from requesting a lesser-

13

In its response to the Motion, the State relies on both *Allison* and *Robertson.* However, the present case is distinguishable. In *Allison,* trial counsel submitted an affidavit asserting that the defense's trial strategy was that the defendant was not at the scene of the crime, and the Supreme Court found no reason in the trial record to doubt that claim.[45] Similarly, in *Robertson,* the court made a finding that trial counsel took an all-or-nothing approach in trying to convince the jury that he was not at the scene of the crime and that he was not guilty of *any* offense.[46] Here, Counsel did not adopt that strategy. Instead, Counsel requested lesser-included instruction on the charge of Rape First Degree. Counsel argued that the evidence from the incident at the apartment—the lack of dents on the door that Morris was supposedly kicking violently, the absence of neighbors who heard any commotion, the photographs of the apartment that showed the apartment was in good order, and the lack of new injuries—was not consistent with Middleton's testimony. Accordingly, I find that Counsel's performance was not consistent with her trial strategy and fell below an objective standard of reasonableness.

## 2. **Was Morris prejudiced?**

---

included offense instruction for the charge of Home Invasion due to the trial court's ruling on the request on the charge of Rape First Degree as that discussion had already taken place.
[45]*Allison,* 2010 WL 3733919, at *2.
[46] *Robertson,* 2012 WL 628001, at *3.

The second prong of *Strickland* requires counsel's failure to be prejudicial. To satisfy *Strickland's* prejudice prong, there must be a "reasonable probability" of a different outcome.[47] If there is evidence that would permit a rational jury to convict a defendant of a lesser-included offense and acquit him of the greater offense, a lesser-included offense instruction is required as a due process protection.[48] In the present matter, an acquittal of the charge of Home Invasion and a finding of guilt to a lesser offense would have significantly reduced the period of incarceration Morris faced. The charge of Home Invasion—which no longer exists—required in part that the person unlawfully entered a dwelling with the intent to commit an enumerated violent felony.[49] Morris argues there are three possible lesser-included offenses of Home Invasion under the facts of his case: Criminal Trespass Third Degree, which requires a person to remain unlawfully on real property;[50] Criminal Trespass First Degree, which requires a person to unlawfully enter a dwelling;[51] and Burglary Second Degree, which requires a person to unlawfully enter a dwelling with the intent to commit a crime therein.[52]

In determining whether Morris was entitled to an instruction on Burglary Second Degree, Criminal Trespass First Degree, or Criminal Trespass Third Degree,

---

[47] *Harrington v. Richter,* 562 U.S. 86, 112 (2011).
[48] *Beck v. Alabama,* 447 U.S. 625, 635-638 (1980).
[49] 11 *Del. C.* § 826(A) (2017) (REPEALED).
[50] 11 *Del. C.* § 821.
[51] 11 *Del. C.* § 823.
[52] 11 *Del. C.* § 825.

I must determine whether the record in this case provides a rational basis for acquitting Morris of Home Invasion and convicting him of one of the lesser-included offenses. At the outset of my analysis, I note that the jury's verdicts indicate that the jurors had doubts about what transpired at Middleton's apartment in Laurel, despite Middleton's testimony. Although the jury found Morris guilty of Home Invasion, Assault Third Degree, and two counts of Non-Compliance with Bond related to the incident at the apartment, it found him not guilty of Strangulation. More importantly, the jury could not agree upon a verdict on the charge of Rape First Degree. Taken together, these varying outcomes suggest that the jury believed Morris was present at Middleton's apartment but were not convinced beyond a reasonable doubt about the severity of Morris's acts at or inside the apartment.

After reviewing the evidence, I find that the jury could have convicted Morris of one of the lesser-included offenses of Home Invasion. The jury could have found that Morris entered or remained unlawfully in Middleton's apartment with the intent to commit a crime other than one of the specific felonies enumerated in the Home Invasion statute—which it did when it found Morris guilty of Assault Third Degree. In this scenario, if it had the option, the jury could have returned a verdict of guilty of Burglary Second Degree.[53] The only charge Morris faced that was sufficient to

---

[53] One of the elements of the Home Invasion charge in the Indictment was that Morris "committed or attempted to commit the felony of Rape." App. To Pet'r. Am. Mot. for Postconviction Relief, at A31. On direct appeal, the Delaware Supreme Court determined that any inconsistency in these

sustain a conviction of Home Invasion was the charge of Rape First Degree. Counsel elicited evidence that could lead a rational jury to acquit on the charges of Rape First Degree, or an Attempted Rape First Degree. Officer Cannon and Officer Story both testified there were no muddy footprints in the room, despite the muddy footprint on the front door and Middleton's testimony that Morris was wearing his shoes when he accosted her in her apartment. There was additional testimony about a lack of disturbance in the apartment, while Middleton testified a violent crime occurred there. Additionally, Nurse Cartwright testified that Middleton had no injury in her pelvic region. Counsel also elicited testimony that Middleton did not have injuries beyond what was observed after the Seaford incident, even though she claimed Morris assaulted her at her apartment. I find this evidence could have been considered by a rational jury to acquit Morris of the charge of Home Invasion and convict him on the lesser-included offense of Burglary Second Degree.

There was also evidence supporting an acquittal of Home Invasion and a conviction of Criminal Trespass First or Third Degree. To acquit Morris of Home Invasion and convict him of Criminal Trespass First Degree, the jury could have found that Morris entered or remained unlawfully inside Middleton's apartment. This finding could have been supported by the lack of disturbance in the apartment.

---

verdicts—*i.e.* failure to convict him of Rape First Degree, while finding him guilty of Home Invasion—could be ascribed to jury lenity. *Morris*, 2019 WL 2123563, at *4 (Del. 2019).

There is also evidence that would support a conviction of Criminal Trespass Third Degree. To convict Morris of this charge, the jury could have concluded that Morris went to Middleton's apartment but did not enter it and only remained unlawfully. The jury could have reached this conclusion because although there was a muddy footprint on the door, the officer did not observe mud inside the apartment.

This case is similar to *Baynum v. State*.[54] In *Baynum*, trial counsel admitted that although he had asked for lesser-included instructions on other charges, he had forgotten to make the request for an instruction on the charge of Offensive Touching as a lesser-included offense of Assault Third. The Supreme Court agreed with the trial court's postconviction assessment that the jury "might have found Baynum guilty of a crime it might otherwise have found him not guilty had it been presented with another option."[55] As to the prejudice prong, however, the trial court in *Baynum* found there was no prejudice because the jury found Baynum guilty of First Degree Burglary and not the lesser-included offense of Second Degree Burglary, so it was unlikely the jury would have found him guilty of the lesser-offense of Assault Third.[56] The Supreme Court disagreed. It concluded that if the jury had found Baynum guilty of Offensive Touching instead of Assault Third Degree, it was

---

[54] 211 A.3d 1075, 1083 (Del. 2019).
[55] *Id.* at 1084.
[56] The trial court also found no prejudice because Baynum could not prove that he would have received a lesser sentence, but the Supreme Court said it was irrelevant whether or not Baynum would have received a lesser sentence.

18

logical that the jury would have availed itself of the option to convict him of Second Degree Burglary instead of First Degree Burglary, which carries a much less-severe sentence. Here, unlike in *Baynum*, the jury hung on the charge of Rape First Degree and acquitted Morris of Strangulation, acts which strongly suggest that it did not find the State's evidence entirely convincing. I find there was a reasonable probability the jury would have found Morris guilty of lesser crimes than Home Invasion if given the opportunity. As the Delaware Supreme Court noted in *Baynum*, if "there is at least a reasonable probability of a different sentence . . . that is all *Strickland* requires to show prejudice."[57] Therefore, Counsel's failure to request lesser-included instructions on the charge of Home Invasion resulted in prejudice to Morris because the jury could have found him guilty of offenses that carried significantly less incarceration.

## V.   <u>CONCLUSION</u>

For the aforementioned reasons, I find that Morris has met his burden under both prongs of the *Strickland* standard regarding the conviction of Home Invasion. Therefore, I grant Morris's 61 Motion for Postconviction Relief for that charge.

---

[57] *Baynum*, at 1085.

19