IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVIN COLEMAN, | § | |
| | § | |
| Defendant Below, | § | No. 196, 2025 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2010012644A/B (K) |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: April 24, 2026
Decided: June 17, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## <u>**ORDER**</u>

After consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    The appellant, Devin Coleman, has appealed a Superior Court order adopting a Superior Court Commissioner's report and denying Coleman's motion for postconviction relief under Superior Court Criminal Rule 61. For the reasons discussed below, we affirm the Superior Court's judgment.

(2)    The Court previously described the events leading to Coleman's convictions as follows:

In June 2020, Devin Coleman, a convicted felon prohibited from possessing a firearm, was released on probation after completing an 8-year prison sentence. Soon after his release, the police began

monitoring Coleman's calls through court-approved telephone wiretaps, as part of a joint contraband investigation by the City of Dover Police and the Delaware State Police. At the time, Coleman, a Level III probationer, lived in Room 117 of the Capitol Inn in Dover.

On July 21 and 22, the police listened to Coleman over the wiretap as he discussed guns and drugs. During the calls on July 21, Coleman expressed a desire to purchase firearms, and, the following day, Coleman was recorded telling associate Antwan Campbell, "I spent $1,700 on guns yesterday."

After Coleman made these incriminating statements, he was observed, on the morning of July 22, 2020, carrying a blue backpack into his motel room at the Capitol Inn. A few minutes later, Coleman went outside to take a call from his friend Kendra Lewis. Lewis, who then arrived by car, was greeted by Coleman and the two walked back into the motel room together. Shortly after that, probation officer Ricky Porter and two other officers knocked on the door with the intention of conducting an administrative search. Hearing the knock, Coleman looked out the window, and Porter asked him to open the door. Lewis, James Ayers, and Shaketah Giles were also in the room. Coleman did not open the door immediately. Instead, he turned to Ayers, who was moving things around, and asked him, "Yo, you good?" and Coleman then opened the door.

Once inside, Porter and the officers found drugs containing Fentanyl. Porter also located the blue backpack that Coleman was seen carrying into the room within the preceding hour. Inside the blue backpack, Porter found (i) one Ruger handgun with a loaded 9mm magazine inserted, (ii) one Smith & Wesson with an unloaded .40 caliber magazine inserted, and (iii) one spare .40 caliber magazine that was unloaded and loose in the backpack. Porter photographed the items "before handling the weapons."

During the evidence collection process, Porter removed the magazines from the Ruger and the Smith & Wesson and confirmed that neither weapon's chamber contained a round. Only the 9mm magazine found in the Ruger contained any ammunition. When he seized the .40 caliber magazines, both of which were unloaded and appeared to be

2

"identical," Porter did not designate which magazine was found in the Smith & Wesson.

Porter delivered the evidence to the Dover Police Department. The items were then tagged and separately photographed. Later, Detective Nolan Matthews, a Dover Police Department crime-scene investigator, lifted three fingerprints from one of the .40 caliber magazines, an examination of which showed that the prints belonged to Coleman, Mack, and Ayers. These were the only fingerprints found that had any identification value. Because no effort had been made when seizing the evidence to differentiate between the two .40 caliber magazines, there was no way to tell which of the .40 caliber magazines the fingerprints were lifted from—the magazine found inside the Smith & Wesson or the one that was loose in the backpack.

Based on the wiretap investigation, a Kent County grand jury indicted 29 defendants, including Coleman, on racketeering, drug, and weapons offenses. Separately, Coleman faced additional charges stemming from the search of his motel room, including two charges of possession of a firearm by a person prohibited and one charge of possession of ammunition by a person prohibited. To avoid the prejudice that might attend the jury's learning of Coleman's prior felony conviction and his status as a "person prohibited," the court severed the "person prohibited" charges and held two trials. The same jury heard both cases and much of the separately presented evidence overlapped. To streamline the trial, the first trial was limited to one drug dealing (fentanyl) charge; the State entered nolle prosequis as to eight other charges pending against Coleman. The second trial was limited to two charges of possession of a firearm by a person prohibited and one count of possession of ammunition by a person prohibited….

[T]he jury found Coleman guilty of the lesser-included offense of misdemeanor possession of fentanyl. Then, in the second trial, after the prosecution rested, the court denied Coleman's application for a missing evidence instruction finding no breach of the State's duty to collect or preserve evidence.

Coleman then testified in his own defense that he was lying when he told Campbell that he had spent "$1,700 on guns." According to Coleman, when he entered the Capitol Inn on the morning of July 22,

3

the blue backpack contained a pair of sneakers. Coleman opined that Ayers had deposited the guns and spare magazine into the blue backpack while Coleman was outside talking on the phone with Lewis in the minutes before the probation officer arrived to conduct the search. He also claimed that he only briefly touched the spare .40 caliber magazine on the morning of July 22 when he slid the "clip" across the sink to Ayers and told him to "pick this stuff up."

At the end of the second trial, the jury found Coleman guilty of only one count of possession of a firearm by a person prohibited. Because neither of the counts charging Coleman with possession of a firearm by a person prohibited describes the firearm—that is, neither count identifies the type of firearm Coleman was alleged to have possessed— we do not know whether Coleman was convicted of possessing the Ruger or the Smith & Wesson firearm.[1]

(3)     After granting the State's habitual offender petition, the Superior Court sentenced Coleman to 29 years of unsuspended Level V time for possession of a firearm by a person prohibited ("PFBPP") and a fine for drug possession. On appeal, this Court affirmed Coleman's conviction, holding that the Superior Court did not err in denying his request for a "missing evidence" instruction.[2]

(4)     On May 1, 2023, Coleman filed a timely motion for postconviction relief and a motion for appointment of counsel. The Superior Court granted the motion for appointment of counsel and referred the matter to a Superior Court Commissioner. Coleman's postconviction counsel filed an amended motion for postconviction relief. The motion alleged that Coleman's trial counsel was

---

[1] *Coleman v. State*, 289 A.3d 619-623 (Del. 2023) (citations omitted).

[2] *Id.* at 629.

ineffective for failing to object to (i) the inclusion of the accomplice-liability instruction from the jury instructions for the first trial in the jury instructions for the second trial, and (ii) the trial court's reliance on impermissible factors at sentencing. Following trial counsel's submission of an affidavit responding to the allegations, the State's response to the postconviction motion, and Coleman's reply, the Commissioner issued a report finding that Coleman failed to prove his trial counsel was ineffective and recommending denial of the postconviction motions. The Superior Court accepted the Commissioner's recommendation and denied the postconviction motions. This appeal followed.

(5)     We review the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[3] We review constitutional claims, including claims of ineffective assistance, *de novo*.[4] The Court considers the procedural requirements of Rule 61 before addressing any substantive issues,[5] but most claims of ineffective assistance raised in a timely postconviction motion are not procedurally barred.[6] On appeal, Coleman argues that his trial and appellate counsel were ineffective in their handling of the accomplice-liability instruction and that his trial counsel was

---

[3] *Baynum v. State*, 211 A.3d 1075, 1082 (Del. 2019).

[4] *Id*.

[5] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[6] *Green v. State*, 238 A.3d 160, 175 (Del. 2020).

ineffective for failing to object to the Superior Court's reliance on impermissible factors at sentencing.

(6)     To prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate that: (i) his counsel's representation fell below an objective standard of reasonableness, and (ii) but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different.[7] There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[8] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[9]

(7)     In his amended postconviction motion, Coleman argued that his trial counsel was ineffective for failing to object to the incorporation of the accomplice-liability instruction from the first trial in the jury instructions for the second trial. Coleman's trial counsel challenged this argument in his affidavit, contending that he did object to the inclusion of this instruction. In his postconviction reply, Coleman contended that his trial counsel had waived the objection, but if the Superior Court found otherwise then his appellate counsel was ineffective for failing to raise the issue on direct appeal. Coleman has failed to show that either his trial counsel or

---

[7] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[8] *Id.* at 689.

[9] *Id.* at 694.

6

appellate counsel were ineffective with respect to the accomplice liability instruction.

(8) The jury instructions for the first trial on the drug charges included an instruction on accomplice liability. This instruction provided, among other things, that:

> So in order to find the defendant guilty of an offense committed by another person, you must find that all three of the following elements have been proven to your satisfaction beyond a reasonable doubt: One, another person committed the offenses charged, namely drug dealing, possession with intent to deliver Fentanyl as I've explained that offense to you.
>
> The defendant—2, the defendant intended to promote or facilitate the commission of the offense. In other words, it was his conscious object or purpose to further or assist the commission of the offense.
>
> And 3, the defendant aided, counseled, or agreed, or attempted to aid the other person in planning or committing the offense.[10]

During closing arguments in the first trial, the prosecutor argued that the jury could find Coleman guilty of the drug charges as an accomplice.

(9) When the parties discussed the jury instructions for the second trial on the weapon charges, Coleman's trial counsel questioned whether accomplice liability applied to the weapon offenses. The Superior Court and prosecutor agreed that accomplice liability only applied to the drug offenses. Coleman's trial counsel then asked the Superior Court to instruct the jury that, although most of the jury

---

[10] App. to Answering Br. at B113.

instructions from the first trial carried over to the second trial, the accomplice-liability instruction did not. The Superior Court found that such a carve-out was unnecessary because the accomplice-liability instruction was expressly limited to the drug charges. Coleman's trial counsel ultimately agreed, stating:

> You know what, you're right, Your Honor. I didn't see it. It does say, page 9, paragraph 1, another person committed the offense as charged, namely, drug dealing, possession with intent to deliver fentanyl. It doesn't say anything about the gun, so I can refer to that in the jury instructions and it's completely consistent. All right, Your Honor.[11]

(10)    After the parties rested in the second trial, the Superior Court advised the jury that they should consider the supplemental jury instructions along with the jury instructions from the first trial. During closing arguments, the prosecutor did not argue that the jury could find Coleman guilty as an accomplice. Instead, based on the wiretap evidence, the presence of the firearms in Coleman's backpack, and Coleman's fingerprint on one of the magazines, the prosecutor asserted that Coleman purchased and possessed the firearms.

(11)    Coleman's trial counsel emphasized to the jury that Coleman could not be found guilty as an accomplice, stating:

> Another point that I wanted to touch upon was there is an instruction that was applicable to the first case that is not applicable to this case, and that is the instruction regarding accomplice liability. And if you go back and look at that instruction, it specifically states in it the theory of accomplice liability was being utilized to attempt to establish liability

---

[11] *Id.* at B128.

for the offense of drug dealing, possession with intent to deliver the drug fentanyl. It did not extend to possession of a firearm, possession of firearm ammunition. It only related to the possession of fentanyl with the intent to deliver the drug dealing charge.

So that theory about accomplices and about aiding somebody or helping somebody, and if there was that type of connection that was made, that's enough for a person who is not owning something on a person or physically possessing something could be guilty of it, does not apply here.[12]

Before their deliberations, the jurors were provided with a copy of the original instructions and the supplemental instructions. The jury found Coleman guilty of one count of PFBPP.

(12)   As the Superior Court concluded, Coleman's trial counsel's handling of the accomplice liability-instruction did not fall below an objective standard of reasonableness. The accomplice-liability instruction in the first trial expressly referred to the drug charges, not the weapon charges. Unlike in the first trial, the prosecutor did not argue in the second trial that the jury could find Coleman guilty of the weapon  as an accomplice. Coleman's trial counsel stressed to the jury that the accomplice-liability instruction applied only to the drug charges, not the weapon charges. Nothing in the record suggests that the jury was confused by the accomplice-liability instruction and found Coleman guilty of PFBPP as an accomplice instead of as a principal. "[B]y all appearances, the jury concluded that

---

[12] *Id.* at B170.

Coleman possessed at least one of the two handguns found in his blue backpack—most probably, the .40 caliber Smith & Wesson, given his possession of the unloaded .40 caliber magazine.[13] Coleman has not shown that either his trial counsel or appellate counsel were ineffective with respect to the accomplice-liability instruction.

(13) Nor has Coleman demonstrated that his trial counsel was ineffective for failing to object to the Superior Court's alleged use of impermissible sentencing factors. At sentencing, the Superior Court found that there were seven aggravating factors—prior violent criminal conduct, repetitive criminal conduct, undue depreciation of the offense, custody status at the time of the offense, lack of remorse, lack of amenability to lesser sanctions, and habitual-offender status. The court found that there were no mitigating factors. In discussing the aggravating factors, the court:

> Assign[ed] considerable weight to two. They are your lack of remorse and that you reoffended barely 40 days after your release from an eight-year prison sentence after just being released into the community on probation and conditional release.
>
> As to your lack of remorse and lack of acceptance of responsibility—and that is so important in the Court's eyes because it tends to demonstrate whether you're committed to change; and thus, will be less likely to reoffend in the future—the Court observed the A Case in this matter, the drug dealing case, in which you did not testify.
>
> That was your right and there was absolutely nothing inappropriate about that. What is so striking, however, is that after the jury acquitted

---

[13] *Coleman*, 289 A.3d at 629 (citation omitted).

10

you of drug dealing in that case; that is, of possessing those drugs in the motel room that you had rented, you then took the stand in the B Case and essentially admitted you were a drug dealer. There was no remorse or acceptance of responsibility in your demeanor when you testified or at any other point in this process.

Also then, as a defense in the B Case that involved firearm possession, you admitted that you were trying to obtain two semiautomatic firearms to protect yourself because you were a drug dealer and you had heard someone was going to try and kill you.

But to avoid responsibility, you again claimed without remorse or acceptance of responsibility that the firearms you were trying to buy were not the same that were found in the motel room you had rented. Your testimony in this regard showed a callous lack of remorse given that you were just released from an eight-year prison sentence for also possessing a firearm while you were a person prohibited.[14]

(14) Coleman argues that his trial counsel should have objected to the Superior Court impermissibly finding that Coleman demonstrated a lack of remorse by testifying that he was a drug dealer during the second trial after he was acquitted of drug dealing in the first trial. The Superior Court found that Coleman's trial counsel was not ineffective because the court did not consider impermissible factors in sentencing Coleman.

(15) As the Commissioner recognized, the sentencing judge's finding of a lack of remorse was not based solely on Coleman's admission to drug dealing in the second trial. The court found that Coleman also demonstrated a lack of remorse by

---

[14] App. at B173-74.

11

testifying that he was trying to purchase guns shortly after his release from prison for PFBPP. In addition, the court found other aggravating factors including repetitive criminal conduct, custody status at the time of the offense, lack of remorse, lack of amenability to lesser sanctions, and habitual offender status. The court was particularly troubled by Coleman's purchase of firearms just weeks into his probation and conditional release for his previous PFBPP conviction. Coleman does not challenge any of the other aggravating factors identified by the sentencing judge when he sentenced Coleman, as a habitual offender, to 29 years of unsuspended Level V time. Even assuming that there was a basis to object to the Superior Court's finding that Coleman's testimony about his drug dealing demonstrated a lack of remorse, he cannot show a reasonable probability of a different outcome. For all the foregoing reasons, the Superior Court did not err in denying Coleman's motion for postconviction relief.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice